**Lorraine PRATTE, Plaintiff-Appellee,**

v.

**NATIONAL LABOR RELATIONS BOARD, et al., Defendants-Appellants.**

No. 82–1064.

United States Court of Appeals, Seventh Circuit.

Argued May 13, 1982.

Decided July 8, 1982.

Richard F. Watt, Chicago, Ill., for plaintiff-appellee.

J. Paul McGrath, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., for defendants-appellants.

Before PELL, Circuit Judge, DAVIS,* Judge, and WOOD, Circuit Judge.

PELL, Circuit Judge.

The Government challenges the district court's grant of a preliminary injunction ordering the National Labor Relations Board (NLRB) to hire Lorraine Pratte as a law clerk-trainee in its Chicago Regional Office. The propriety of the injunction turns on whether the plaintiff showed a likelihood of success on the merits of her claim that the Government should be estopped from revoking her appointment.

## I. FACTS

Lorraine Pratte is a 1981 graduate of Harvard Law School. She decided to pursue a career in labor law and, in September, 1980, sought a position with the NLRB. She believed that working for the agency would be the best way to gain experience and early responsibility in her chosen area of legal specialization.

The plaintiff's choice was to work for the NLRB in Washington, D. C. On January 15, 1981, the NLRB offered Pratte a position in the Chicago Regional Office, assuring her that she might have the opportunity to transfer to the Appellate Division in Washington, D. C. after working two or three years in Chicago. Pratte was given one day to accept or reject the NLRB's offer. She accepted, turning down another firm offer of employment and ceasing to pursue other job prospects.

One week later, the NLRB informed Pratte that it could not honor its firm hiring commitment because of President Reagan's hiring freeze. Forty-seven persons other than Pratte received similar notifica-

---

* Oscar H. Davis, Judge of the United States Court of Claims, is sitting by designation.

tion. The plaintiff resumed the job-hunting process. On March 10, 1981, an NLRB official phoned Pratte and told her that the Office of Management and Budget had informed the agency that the money required to hire Pratte and others in her situation would be forthcoming. This conversation was confirmed by a letter dated March 17, 1981, in which the NLRB again offered Pratte employment and indicated that she might be able to report for work before October 5, 1981 if the budget so permitted.

Pratte subsequently took and passed the District of Columbia bar examination, believing that this gave her maximum flexibility in working for the NLRB at any location and was consistent with her desire eventually to work in the Washington, D. C. area. The NLRB confirmed Pratte's appointment in two letters dated August 5 and August 31, 1981. Neither letter made any reference to the NLRB's budget. On September 11, 1981, the plaintiff purchased an automobile and drove to Chicago.

Several relevant events occurred on September 29, 1981. First, the NLRB told Pratte to report for work on October 5, 1981. Second, the plaintiff signed a lease for an apartment in Chicago. Third, that evening an NLRB official phoned the plaintiff and told her that her appointment had again been revoked because of President Reagan's announcement on September 24, 1981, that he would seek new budget reductions for selected federal agencies. The revocation was confirmed by a letter Pratte received the following day.

Pratte found herself in Chicago with a lease and a car and no job. Because she had not taken the Illinois bar examination, her employment prospects in Chicago were limited. Pratte obtained temporary employment as a legal assistant in October, 1981, and subsequently, a full-time job doing legal research. She filed the instant suit on November 10, 1981. Following the district court's grant of a preliminary injunction, Pratte terminated her research job and reported to work at the NLRB.

## II. DISCUSSION

At the outset, we recognize with sympathy the situation in which Lorraine Pratte was placed as a result of the uncertainties of the federal budget and the attempts of the NLRB to anticipate and meet the proposed funding cuts even though the factors which caused the situation were brought about largely by events beyond the control of the hiring agency.

■ Turning to the legal issue before this court, we note that the grant of a preliminary injunction is generally reviewable only for an abuse of discretion. *E.g., Reinders Brothers, Inc. v. Rain Bird Eastern Sales Corp.*, 627 F.2d 44, 49 (7th Cir. 1980); *Sangmeister v. Woodard*, 565 F.2d 460, 464–65 (7th Cir. 1977), *cert. denied*, 435 U.S. 939, 98 S.Ct. 1516, 55 L.Ed.2d 535 (1978). As Judge Aldisert stated in *United States Steel Corp. v. Fraternal Association of Steelhaulers*, 431 F.2d 1046 (3d Cir. 1970):

> This limited review is necessitated because the grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing of the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury which could possibly flow from the denial of preliminary relief. Weighing these considerations is the responsibility of the district judge; only a clear abuse of his discretion will justify appellate reversal.

*Id.* at 1048, *quoted in* 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2962, at 636 (1973). Consistent with this reasoning is the rule, recognized by several courts, that when the availability of preliminary relief turns on interpretation of the law rather than on the facts, the appellate court is free to review *de novo* the district court's judgment. *E.g., California ex rel. Younger v. Tahoe Regional Planning Agency*, 516 F.2d 215 (9th Cir. 1975), *cert. denied*, 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 97; *Delaware and Hudson Railway Co. v. United Transportation Union*, 450 F.2d 603, 620–21 (D.C.Cir.1971), *cert. denied*, 403 U.S. 911,

91 S.Ct. 2209, 29 L.Ed.2d 689; *Societe Comptoir De L'Industrie Cotonniere Etablissements Boussac v. Alexander's Department Stores, Inc.*, 299 F.2d 33, 35–36 (2d Cir. 1962); *see* 11 C. Wright & A. Miller, *supra*, § 2962, at 637.

A preliminary injunction should be granted only if the plaintiff shows that: (1) he or she had at least a reasonable likelihood of success on the merits; (2) there is no adequate remedy at law, and the plaintiff will otherwise be irreparably harmed; (3) the threatened injury to the plaintiff outweighs the threatened harm the preliminary injunction may cause the defendants; and (4) granting the preliminary injunction is not contrary to the public interest. *E.g., Machlett Laboratories, Inc. v. Techny Industries, Inc.*, 665 F.2d 795, 796–97 (7th Cir. 1981). The dispositive criterion in this case is the first enumerated by the *Machlett* court: the likelihood of success on the merits.

█ In order to succeed on the merits, Pratte would have to prove a claim of equitable estoppel against the Government. This court recently articulated the considerations relevant to such a claim in *Portmann v. United States*, 674 F.2d 1155 (7th Cir. 1982). Judge Cudahy, writing for the court, adopted the standard for estoppel articulated by the Ninth Circuit in *TRW, Inc. v. Federal Trade Commission*, 647 F.2d 942 (9th Cir. 1981).[1] Estoppel will be applicable if the Governmental actions amount to "affirmative misconduct" and if four other requirements are met:

> First, the party to be estopped must know the facts. Second, this party must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it is so intended. Third, the party asserting

estoppel must have been ignorant of the facts. Finally, the party asserting estoppel must reasonably rely on the other's conduct to his substantial injury.

674 F.2d at 1167 (quoting *TRW, Inc. v. Federal Trade Commission*, 647 F.2d 942, 950–51 (9th Cir. 1981) (citations omitted)). The fourth requirement, that of reasonable reliance, is critical to this appeal. Two recent cases, which reached different conclusions as to the appropriateness of estoppel, are relevant to what constitutes justified reliance. *See National Treasury Employees Union v. Reagan*, 663 F.2d 239 (D.C. Cir.1981) (NTEU); *Beacom v. EEOC*, 500 F.Supp. 428 (D.Ariz.1980). These two cases also discuss "affirmative misconduct" which Pratte claims is present in the instant case.

The district court in *Beacom* found that the Government had engaged in affirmative misconduct and, therefore, a claim of estoppel was cognizable. Plaintiff Beacom had applied for a position as an EEOC staff attorney. He was offered the position, told by a letter received March 13, 1980, to conclude his private practice in Colorado, and directed to report for work in Phoenix on April 7, 1980. On March 14, 1980, Beacom telephoned the EEOC Hiring Officer to inquire whether President Carter's freeze on hiring by federal agencies would affect his proffered employment. He was assured that it would not. One week later, the Personnel Manager of the Phoenix EEOC office informed Beacom that, as a result of the freeze, his appointment was "on hold." She told him that this did not mean he was not hired. The agency then attempted to telephone Beacom on April 3, 1980, to tell him that his position with the agency could not be filled but was unable to reach him. Beacom reported for work on April 7th and

---

1. *Portmann* stated that the factors enumerated in *TRW, Inc.* "should ... form the basis of the district court's inquiry" regarding the applicability of estoppel. 674 F.2d at 1167. Judge Cudahy then stated that "other factors identified in this court's prior estoppel decisions, including the type of government activity being pursued, the reasonableness of plaintiff's reliance, and the potential danger, posed by estoppel, of undermining important federal interests or risking a severe depletion of the public fisc, may appropriately be weighed in the equitable balance." *Id.* Because each of the factors previously relied on by the court would *restrict* the availability of estoppel, one might characterize the *Portmann* standard as adopting the Ninth Circuit formulation as the *minimum* showing that a plaintiff is required to make.

was then informed that he did not have a job.

The *Beacom* court found that the actions of the EEOC constituted affirmative misconduct,[2] stating that there was "little justification for the Government's failure to inform Mr. Beacom that his appointment would not be considered until his paperwork was approved and he had commenced his duties, or for its delay in informing Mr. Beacom that the President's freeze would affect his job." 500 F.Supp. at 438 (footnotes omitted). The Government was estopped from denying Beacom his position as staff attorney.

In contrast to the result reached by the *Beacom* court, the District of Columbia Circuit recently held in *NTEU* that estoppel would not lie against the Government pursuant to a claim challenging the legality of the hiring freeze ordered by President Reagan on January 20, 1981. In *NTEU*, the plaintiff class was composed of persons who had received letters telling them to report for commencement of their federal jobs on specified dates. No class member had been told that his or her selection was subject either to budgetary constraints or to the discretion of the appointing officer. 663 F.2d at 245.

The *NTEU* court held, contrary to the conclusion reached by the district court,[3] that the plaintiffs had been appointed to their jobs. The District of Columbia Circuit made clear, however, that such appointments could be effectively revoked by a "properly authorized refusal to allow a class member to enter onto duty on the date previously selected." *Id.* at 248 n.13.

The court then turned to the estoppel argument urged by the class members. The panel stated that detrimental reliance, which is essential to a claim of estoppel, requires factfinding on an individual basis.

*Id.* at 249 & n.17. For the sake of discussing this claim, the court assumed that detrimental reliance had been proven. *Id.* The court stated that the classwide allegations of estoppel "amount[ ] to a contention that class members relied upon an express or implied government representation that their 'selections' were irrevocable; had they understood that the appointments were revocable, they would have no grounds for complaint." *Id.* at 249.

The *NTEU* panel also referred to the "affirmative misconduct" requirement recognized by the Ninth Circuit, stating: "We are confident that if an 'affirmative misconduct' exception exists . . ., the conduct of the appointing authorities in these cases does not rise to an actionable level. Here, the problem was not misconduct by the responsible authorities, but the unjustified inference of irrevocability made by the class members." *Id.* (citation omitted).

The court then distinguished *Beacom*, noting that the facts of the two cases were "materially different," *id.*, because Beacom had been assured *after announcement of the hiring freeze* that his prospective employment was not affected and because the EEOC had delayed in correcting this misinformation.

We read *NTEU* as holding that: (1) an appointment to a federal job is revocable by a properly authorized person up to the time the employee actually commences the duties of the position; (2) the Government is not required to advise appointees that such revocation could occur; (3) a claim of estoppel will not lie if the appointment is so revoked because the appointee's reliance thereon is unjustified.

The judge below read the *NTEU* requirement of "proper revocation" as one embodying good faith. In other words, as the

---

2. The *Beacom* court relied on three factors in determining whether the actions of the EEOC constituted affirmative misconduct: (1) the Government's justification for its alleged misbehavior; (2) the magnitude of injury possible from breach of duty, and (3) the harm to the public from permitting estoppel. 500 F.Supp. at 438.

3. The district court had held that the class members had not been appointed but had merely been given offers of jobs. *National Treasury Employees Union v. Reagan*, 509 F.Supp. 1337, 1343–45 (D.D.C.1981), *remanded*, *National Treasury Employees Union v. Reagan*, 663 F.2d 239 (D.C.Cir.1981).

appellee argues, if the Government engaged in "affirmative misconduct," the revocation was not "proper," and holding the Government estopped in the instant case would be wholly consistent with *NTEU*. We disagree with this reading of the District of Columbia Circuit's opinion. We think that the *NTEU* court required no more than that the revocation be made by a duly authorized person and that it be made before the employee commenced the duties of his Government employment.[4] Second, we think that the "affirmative misconduct" criterion is a separate and distinct requirement from that of reasonable reliance. Unless reasonable reliance is proven, there is no reason to reach the question of affirmative misconduct. The *NTEU* opinion is perhaps less clear than it might be on the relationship between reasonable reliance and affirmative misconduct. *See NTEU*, 663 F.2d at 249. We do not think, however, that the *NTEU* dicta regarding affirmative misconduct was meant to imply that the existence of bad faith or similar misconduct would negate the requirement of reasonable reliance. Similarly, nothing in *Beacom v. EEOC*, 500 F.Supp. 428 (D.Ariz.1980), suggests that a showing of affirmative misconduct negates the necessity that a plaintiff demonstrate justified reliance. The *Beacom* court found that the plaintiff's reliance was justified, largely because he talked to the EEOC *after* the hiring freeze was in effect and was assured, on two occasions, that his employment was not affected. As the *NTEU* court suggested, these facts distinguish *Beacom* from *NTEU, see NTEU,* 663 F.2d at 249–50, and allow reconciliation of the differing results reached by the two courts.

■ Lorraine Pratte was an appointee, but not an employee, of the NLRB when her appointment by the agency was revoked. Unlike the plaintiff in *Beacom*, Pratte received immediate notification from the NLRB on both occasions when the agency believed that actual or threatened budget cuts might preclude her being hired. The instant case is, of course, distinguishable from both *NTEU* and *Beacom* in that Pratte was affected by two separate instances of budgetary concern. Although this difference in facts necessarily empathizes one's attitude about the unhappy situation in which the plaintiff found herself, we do not find it to be of legal significance. What is significant is that the NLRB consistently informed Pratte of her status in light of the budgetary information it then possessed; further, the agency furnished the plaintiff such notification without delay.

Pratte does not contend that the revocation of her appointment was made by an unauthorized person or that it was received after she commenced her duties with the agency. Under *NTEU*, therefore, the "inference of irrevocability made by [Pratte]," *NTEU*, 663 F.2d at 249, was unjustified. We believe that *NTEU* states the correct rule regarding what constitutes reasonable reliance in a case such as this. The NLRB and the plaintiff were both victims of tre-

---

**4.** The action of the *NTEU* court, remanding the case for further development of certain claims, does not support the proposition that "proper revocation" requires a finding of good faith. The *NTEU* court stated:

> In some cases ... the appointments were properly revoked. For the reasons set forth in this opinion, those plaintiffs within this category are not entitled to relief on a class-wide basis. In other cases, class members were allowed to enter into duty as federal employees. Once they did so, their appointments could not be revoked. It is possible that there exists a third group of class members: those whose appointments were not properly revoked and who did not enter onto duty. The status of these individuals, even

the fact of their existence, must be developed below and possibly through further litigation. 663 F.2d at 253. The court's reference to this possible "third group of class members," a reference on which the court below relied, suggests no more than that some persons might not have received timely revocation by a properly authorized person. This conclusion is strengthened by the *NTEU* court's earlier discussion regarding "twenty-two appointees, for whom no authorized revocation was made prior to entrance on duty," *id.* at 248. This language similarly suggests that the court was examining the authority of the person making the revocation and the timeliness thereof. There is no reference whatsoever to the "good faith" of the revocation.

mendous uncertainty regarding the federal budget in 1981. Although the situation is regrettable from any point of view, we see no legal basis for distinguishing this case from *NTEU* or for holding that Pratte's reliance was justified.

Because we conclude that the plaintiff failed to demonstrate reasonable reliance, it is not strictly necessary for this court to address the appellee's contentions that the Government engaged in affirmative misconduct. We do note, however, that these allegations rely on two factors: the NLRB's second revocation of her position in response to a budget reduction that was proposed but never enacted, and the current funding level of the agency, which is $4.3 million higher than that requested by President Reagan in September. We believe that the second factor relied on by Pratte is irrelevant to the actions of the NLRB which occurred before this funding level could be predicted let alone guaranteed. The first factor cited by Pratte, that the agency reacted only to a *proposed* cut in funding, could hardly be characterized as affirmative misconduct or bad faith in light of the on-going budgetary crisis.

### III. CONCLUSION

Because Pratte's reliance was not justified, we conclude as a matter of law that no action for estoppel can lie. In a case such as this, where the availability of a preliminary injunction turns on the interpretation of law, we need not reach the question whether the judge below abused his discretion in granting such equitable relief. *See, e.g., California ex rel. Younger v. Tahoe Regional Planning Agency,* 516 F.2d 215 (9th Cir. 1975), *cert. denied,* 423 U.S. 868, 96 S.Ct. 131, 46 L.Ed.2d 97. We do hold that the district judge erred in granting Pratte a preliminary injunction against the NLRB.

The parties have presented fully the facts relevant to Pratte's claim of estoppel. Because we have concluded that no cause of action for estoppel can lie on these facts, little would be achieved by remanding the case to the district court for a full trial. *See Deckert v. Independence Shares Corp.,*

311 U.S. 282, 287, 61 S.Ct. 229, 232, 85 L.Ed. 189 (1940); *Hurwitz v. Directors Guild of America, Inc.,* 364 F.2d 67, 70 (2d Cir. 1966), *cert. denied,* 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435; *Triumph Hosiery Mills, Inc. v. Triumph International Corp.,* 308 F.2d 196, 200 (2d Cir. 1962); 11 C. Wright & A. Miller, *Federal Practice and Procedure* § 2962, at 629–30 (1973).

The judgment of the district court granting the preliminary injunction is therefore vacated and the case is remanded to the court below with instructions to dismiss the cause.