**John HEISLER, Plaintiff,**

**v.**

**FEDERAL SAVINGS AND LOAN IN-SURANCE CORPORATION, an agency and instrumentality of the United States of America, Defendant.**

**No. 82 C 904.**

United States District Court, N.D. Illinois, E.D.

Feb. 8, 1983.

Michael F. Kukla, Cowlin, Cowlin & Ungvarsky, P.C., Crystal Lake, Ill., for plaintiff.

James T. Lantelme, Trial Atty., Federal Home Loan Bank Bd., Washington, D.C., William J. McKenna, Jr. and Mary K. Butler, Hopkins & Sutter, Chicago, Ill., for defendant.

## MEMORANDUM

BUA, District Judge.

The Court has reviewed the Magistrate's recommendations in this case and the parties' briefs, and has decided not to adopt the Magistrate's decision. Therefore, summary judgment is entered for defendant.

The facts may be summarized briefly. Plaintiff, John Heisler, seeks damages for breach of an alleged oral contract of employment from defendant, Federal Savings and Loan Insurance Corporation ("FSLIC"). Heisler, who formerly had been employed by the FSLIC and thus was aware of its procedures, bases his claim solely upon several telephone conversations he had in late 1980 with Mr. Gerald Reese, an FSLIC employee. Heisler, in his deposition, claims that Reese unconditionally offered him employment at a salary of $50,000 per year, to begin November 1, 1980, and to continue for

an indefinite period of time thereafter. Reese, on the other hand, testifies that, while possible employment was discussed, it was clearly explained to Heisler that Reese possessed only the authority to recommend, not approve, employment. A memo recommending Heisler's employment was written, but the employment was disapproved. Unfortunately, Heisler had already quit his prior job when he learned of this fact.

■ Admittedly, the facts are in dispute as to whether Reese promised employment or only promised to recommend employment. However, even assuming a clear, unconditional promise of employment, there is no genuine issue of material fact regarding Mr. Reese's lack of authority to hire Mr. Heisler. As has already been stated, Mr. Reese had, at most, the power to recommend employment to those who were authorized to make the appointment decision. In such a situation, regardless of Mr. Heisler's unfortunate misunderstanding, he had no right to a position. As was recently stated by the Second Circuit Court of Appeals,

"For more than one hundred years, the rule as to when an appointment takes place has been clear: 'when the last act to be done by the [appointing authority] was performed ...'"

*National Treasury Employees Union v. Reagan,* 663 F.2d 239, 242 (2nd Cir.1981) *quoting Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 156, 2 L.Ed. 60 (1803); *see also Goutos v. United States,* 552 F.2d 922, 925 (Ct.Cl.1976). Since the "last act" in Mr. Heisler's employment process could not possibly have taken place until one with authority to hire approved Mr. Reese's recommendation, an act which never occurred, any rights which Heisler might have had did not vest.

The deposition testimony leaves no doubt as to the fact that Reese had no authority to hire Heisler. The position which Heisler was apparently offered was that of "Special Representative" [1] in connection with three savings and loan receiverships instituted pursuant to 12 U.S.C. § 1729 and 12 U.S.C. § 1464(d). FSLIC was appointed receiver in each instance by its supervisory authority, the Federal Home Loan Bank Board ("FHLBB"). In connection with each receivership, FHLBB by Board action, indicated that a "Special Representative" was to be designated by the FSLIC. That individual, according to the Board's resolutions, was that person with the power and authority to act in the name of and on behalf of FSLIC as Receiver.

The deposition testimony leaves undisputed the fact that Gerald Reese, Chief of the Asset Management Division of the FSLIC, was incapable of making the final decision as to whether or not to hire Heisler for the position sought. Mr. Hughes' testimony is clear on this point. Hughes was questioned as follows by Mr. McKenna, counsel for defendant FSLIC:

Q Based on the nature of the position which was proposed ... [for Heisler] ... and your knowledge of Gerald Reese's position and duties and authorities within FSLIC, do you know whether Gerald Reese had the authority to offer John Heisler employment?

A He did not have that authority.

Q Why not?

A The Bank Board designated only three individuals of the FSLIC, and the Bank Board itself to designate and to appoint additional representatives for the three receiverships and Mr. Reese was not one of those three individuals. The Bank Board authorized to the Director, the Deputy Director, and to the Chief of

---

1. The deposition testimony is somewhat confusing as to the title of the position offered Heisler. The court, however, has carefully reviewed the depositions and concludes that there is no real doubt that Heisler was being considered for a job as Special Representative. Heisler clearly believed that was the case. (Heisler Dep. 64, 66). Reese, although refusing to use the job title, conceded that the responsi-

bilities of the proposed position "would ... fall under the purview of a Special Representative." (Reese Dep. 36). And finally, in his deposition, Bobby Hughes, Deputy Director of the FSLIC, testified to his belief that the job responsibilities discussed by Reese and Heisler clearly indicated that the proposed position was that of Special Representative. (Hughes Dep. 31–32.)

the Problem and Rehabilitation Division the authority to designate special representatives. (Hughes Dep. 32).

Additionally, Reese testified to the fact that he could not, on his own, contract for Heisler's employment (*see e.g.* Reese Dep. 42, 46). And, finally, Heisler, himself, indicated that he was aware of the fact that Reese alone did not possess final authority to hire. (Heisler Dep. 32–33, 61–62, 71–76, 96–100.)

In light of the above, it is clear that Reese was incapable of completing the "last act" required for the employment of the plaintiff, because Reese lacked authority to make the final decision. Thus, no contract of employment came into being, and no breach occurred.

Heisler, seemingly acknowledging the above, apparently argues that Reese either deliberately misrepresented his authority or negligently failed to clarify his authority in his conversations with Mr. Heisler. In his memorandum in opposition to defendant's motion for summary judgment, originally considered by the Magistrate, Heisler's counsel states,

> "I believe it is important to indicate that Mr. Reese was not a new employee of the FSLIC. He held the position of Chief of [the] Asset Management Division [of the FSLIC] for eight years. . . . He was aware of his authority. If Reese did not have any such authority, why did he initially contact John Heisler and ask him to return to the employ of the FSLIC? Why did Reese undertake negotiations pertaining to the position, salary and length of employment with John Heisler if he did not have such authority?"

Plaintiff's Memorandum at 4. Plaintiff's argument poses various interesting questions; however, in light of the precedents regarding estoppel *vis-a-vis* the government, plaintiff's claim must fail. It has long been stated that

> "Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority. The scope of this authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power. And this is so, even though, as here, the agent himself may have been unaware of the limitations upon his own authority."

*Federal Crop Insurance Corp. v. Merrill,* 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). The general rule was recently reaffirmed in *National Treasury Employees Union v. Reagan,* 663 F.2d 239 (D.C.Cir.1981), a case dealing with the legality of President Reagan's federal hiring freeze. The plaintiff class alleged that because its members believed that their government jobs were irrevocable, the government was estopped from revoking its commitments under the freeze. The Court analyzed the problem from two perspectives: what was said by the appointing authorities and what was believed by the appointees. Although it was ultimately found that the latter perspective was the crucial one,[2] *cf. Pratte v. N.L.R.B.,* 683 F.2d 1038 (7th Cir.1982), the Court, in dicta, discussed the principle of *Merrill, supra.* The Court stated,

> "If an appointing authority were viewed as having 'promised' a class member that the class member was receiving an 'irrevocable' appointment, . . . estoppel would be barred on the grounds that the action was outside the authority of the agent."

663 F.2d at 249.

It is of course true that the above principle is not limitless. Recently, the Seventh Circuit, in an exhaustive and scholarly opinion by Judge Cudahy, delineated various factors which should be considered in determining whether the government, in an individual case, might be estopped by the unauthorized acts of its employees. *Portmann v. United States,* 674 F.2d 1155 (7th Cir.1982). The Seventh Circuit quoted with approval

---

**2.** "Here, the problem was not misconduct by the responsible authorities, but the unjustified inference of irrevocability made by the class members." 663 F.2d at 239.

the Ninth Circuit's opinion in *TRW, Inc. v. Federal Trade Commission,* 647 F.2d 942 (9th Cir.1981), setting forth five requirements which must be met before applying estoppel principles against a government entity. The Ninth Circuit stated,

"First, the party to be estoped must know the facts. Second, this party must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has a right to believe it is so intended. Third, the party asserting estoppel must have been ignorant of the facts. Finally, the party asserting estoppel must reasonably rely on the other's conduct to his substantial injury."

647 F.2d at 950–51 (citations omitted), *quoted in* 674 F.2d at 1167. After quoting the above, the Seventh Circuit continued,

"In addition, the Ninth Circuit noted that 'the government action upon which estoppel is to be based, must amount to affirmative misconduct' which the court defined as 'something more than mere negligence.'"

674 F.2d at 1167 *quoting* 647 F.2d at 950–51.

Subsequently, in a case specifically involving government employment, the Seventh Circuit analyzed both *Portmann* and the Second Circuit's *National Treasury Employee's Union* case, particularly with regard to the reasonable reliance and affirmative misconduct requirements. The Court stated first that, "[t]he fourth requirement, that of reasonable reliance, is critical to this appeal." *Pratte v. N.L.R.B.,* 683 F.2d 1038, 1041 (7th Cir.1982). The Court continued,

"Second, we think that the 'affirmative misconduct' criterion is a separate and distinct requirement from that of reasonable reliance. Unless reasonable reliance is proven, there is no reason to reach the question of affirmative misconduct."

*Id.* at 1043. This analysis is a guide for the instant case.[3] If Heisler's alleged reliance was in fact unreasonable, then his estoppel argument must fail, regardless of any misstatements on Reese's part.

■ The Court believes that in light of Heisler's prior employment experience with the FSLIC and his understanding of FSLIC employment procedures, his alleged reliance on Reese's alleged misstatements cannot be characterized as reasonable. As has already been stated, his deposition testimony makes clear that he was aware of the fact that Reese alone did not possess final authority to hire. (Heisler Dep. 32–33, 61–62, 71–76, 96–100.) Thus, Heisler stands in the anomalous position of claiming an estoppel when he knew the facts. He was aware that the Deputy Director could veto Mr. Reese's recommendation for Heisler's employment. Nevertheless, Mr. Heisler, without verifying whether the plan had been approved, terminated his existing employment. This action cannot be considered reasonable, and thus cannot support Heisler's estoppel claim.

In light of the foregoing, it is unnecessary to address defendant's additional arguments in support of its motion for summary judgment. That motion is granted.

IT IS SO ORDERED.

---

**3.** Although the *Pratte* case guides this Court's analysis, it is by no means controlling precedent. *Pratte,* like the *National Treasury* case, dealt with estoppel in the context of revocation of government employment on budgetary grounds. The uncertainty of the federal budget in the then current political and economic climate was thus a key element of the Court's reliance analysis. ("The NLRB and the plaintiff were both victims of tremendous uncertainty regarding the federal budget in 1981. Although the situation is regrettable from any point of view, we see no legal basis for distinguishing this case from NTEU [*National Treasury*] or for holding that plaintiff's reliance was justified." 683 F.2d at 1043–1044.) In light of this, this Court believes that defendant fails in its attempt to cite *Pratte* for the proposition that reliance on government employment may never be considered reasonable for estoppel purposes. Rather, *Pratte* at most dictates that, in the face of a revocation motivated by budgetary concerns, an appointee may not argue that he or she reasonably inferred that the appointment was immune from changes in funding. ("What is significant is that the NLRB consistently informed Pratte of her status in light of the budgetary information it then possessed.")