Wieslaw **KLASKALA**, Plaintiff,

v.

**U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.**

No. 94–0545–CIV.

United States District Court, S.D. Florida.

June 12, 1995.

William Murphy, Miami, FL, for plaintiff.

Carole M. Fernandez, Asst. U.S. Atty., Miami, FL, for defendant.

### ORDER

GRAHAM, District Judge.

**THIS CAUSE** came before the Court upon Defendant's Motion to Dismiss (DE 9).

**THE COURT** has considered the Motion, response and the pertinent portions of the record, and being otherwise fully advised in the premises, it is

**ORDERED AND ADJUDGED** that the Motion is DENIED IN PART AND GRANTED IN PART.

### STATEMENT OF FACTS

Plaintiff Wieslaw Klaskala ("Klaskala") is a citizen residing in Florida.

Defendant U.S. Department of Health and Human Services ("HHS") is an Executive Department of the United States government. Within the HHS is the Public Health Service ("PHS") which operates the Center for Disease Control ("CDC") which in turn operates the Epidemic Intelligence Service ("EIS").

As stated in the complaint, this dispute arises from Klaskala's application and subsequent appointment to the EIS in Georgia.

Klaskala brought this action against the HHS for the following counts: (1) Denial of Due Process pursuant to the Fifth Amendment of the United States Constitution; (2) Violations of the Civil Service Reform Act; (3) Estoppel; (4) Breach of Contract; and (5) Violations of the Freedom of Information Act ("FOIA").

In connection with his application for a position with EIS, Klaskala completed an SF–171 Form and attended interviews at his own expense in Atlanta, Georgia.

By a letter dated December 9, 1991, the EIS Selection Committee offered Klaskala a position in Atlanta. The letter [1] states in pertinent part:

We are delighted to confirm that you have been selected for a position in the Epidemic Intelligence Service (EIS) program, beginning July 1992. The EIS Selection Committee joins us in congratulating you.

\*　　\*　　\*　　\*　　\*　　\*

We will be looking forward to welcoming you personally next April. In the meantime, we look forward to receiving written confirmation of your acceptance of an EIS position within 10 days of receipt of this letter.

\*　　\*　　\*　　\*　　\*　　\*

This letter was signed by Polly A. Marchbanks, Ph.D., the Chief of the EIS Program

---

**1.** " 'In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.' " *Watson v. Bally Mfg. Corp.,* 844 F.Supp. 1533, 1535 n. 1 (S.D.Fla.1993), *citing to,* 5A Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1357 (1990).

and Willard Cates, Jr., M.D., M.P.H., Director of the Division of Training for the Epidemiology Program Office.

Klaskala duly accepted this appointment in a letter also dated December 9, 1991.

From December 9, 1991 to May 19, 1992, EIS contacted Klaskala on several occasions to begin integrating him into its activities. These contacts included the following:

1. An invitation from CDC to attend the Atlanta, Georgia orientation program in April 1992.
2. A letter from Melissa Adams, M.P.H., Ph. D., Assistant Director for the Science Division of Reproductive Health to Klaskala, congratulating him on his appointment to EIS.
3. A memorandum dated April 2, 1992 from Assistant Director for Science, the EPO Chief, the EIS Program, the DT and the EPO to Klaskala regarding the process for incoming EIS officers to obtain EIS assignments.
4. Klaskala's assignment on April 12, 1992, to the National Center for Preventative Services, Division of STD/HIV Prevention, Behavioral Studies Section ("STD/HIV Prevention Division") by the EIS Director.
5. Klaskala's introduction on April 13, 1992, to his Supervisor, Dr. Cole, and the staff at the STD/HIV Prevention Division.
6. Written instructions dated April 13, 1992, by an HHS shipping officer to Klaskala to inform him how to arrange for HHS to ship his possessions to Atlanta.

In addition, Klaskala put his possessions in storage and made arrangements to move from Florida to Atlanta, Georgia to begin his appointment in July.

In or about April 1992, Klaskala also informed Dr. Cole that he had made arrangements to move to Georgia and to leave his then current position with the State of Florida Health Office.

Klaskala also informed Dr. Cole that he would be travelling in Eastern Europe before commencing his appointment in July and would do some investigative work related to the HHS program while he was there.

By a letter dated May 19, 1992, CDC withdrew Klaskala's appointment to EIS. CDC's letter stated in pertinent part:

We are withdrawing our offer of a 2–year appointment in the Epidemic Intelligence Service (EIS) Program at the Centers for Disease Control (CDC) beginning in July 1992.

This action is necessary since we have been unable to verify your credentials to our satisfaction. Also, we have received information which indicates a history of previous arrests for misdemeanor and felony charges that were not shown on your SF–171 Form.

This letter was signed by Robert G. Pajer, Acting Director for the Personnel Management Office.

The withdrawal appears to be the result of a background check which revealed eight arrests for misdemeanors and felonies in Dade County from 1986–1991 and one arrest in Alachua County in 1980.

Klaskala asserted that he completed the SF–171 Form accurately because he was never convicted for any crime, felony or misdemeanor. Thus, although not entirely clear from the record, it appears that Klaskala's position with regard to the background check and the SF–171 Form is that Klaskala was never convicted, but may have been arrested as indicated in the background reports.

Klaskala asserts that the withdrawal was wrongful because his credentials were legitimate and his SF–171 Form was completed accurately. Therefore, Klaskala commenced this action.

The government has moved to dismiss Klaskala's complaint.

### DISCUSSION

### I. Standards for Motions to Dismiss

Motions to dismiss for failure to state a claim are generally viewed with disfavor and rarely granted. *Eaton v. Coal Par of West Virginia, Inc.,* 580 F.Supp. 572, 576 (S.D.Fla.1984). It is well-settled that a "complaint should not be dismissed for fail-

ure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In ruling on a motion to dismiss, a federal court must view the complaint in the light most favorable to the plaintiff and take its allegations as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984).

## II. Count II: Violations of Civil Service Reform Act

 Although listed as Count II in his complaint, the Court will first address Klaskala's allegations that he is entitled to relief under the Civil Service Reform Act of 1978 ("CSRA") (codified in various sections throughout 5 U.S.C.). The CSRA was enacted to govern federal civil service employment disputes. *Broughton v. Courtney*, 861 F.2d 639, 641–42 (11th Cir.1988).

However, in order to qualify for the protections of the CSRA, the individual seeking relief must be a federal employee. *National Treasury Employees Union v. Reagan*, 663 F.2d 239, 246 (D.D.C.1981).

The Act defines federal employees as follows:

§ 2105. Employee

(a) For the purpose of this title, "employee," except as otherwise provided by this section or when specifically modified[2], means an officer and an individual who is—

---

2. In addition, 5 U.S.C. § 7511 states in pertinent part:

§ 7511. Definitions; application
(a) For the purpose of this subchapter [5 U.S.C.S. §§ 7511 et seq.]—
(1) "employee" means—
(A) an individual in the competitive service—
(i) who is not serving a probationary or trial period under an initial appointment; or
(ii) who has completed 1 year of current continuous service under other than a temporary appointment limited to 1 year or less;
(B) a preference eligible in the excepted service who has completed 1 year of current continuous service in the same or similar positions—
(i) in an Executive agency; or

(1) appointed in the civil service by one of the following acting in an official capacity—

(A) the President;

(B) a Member or Members of Congress, or the Congress;

(C) a member of a uniformed service;

(D) an individual who is an employee under this section;

(E) the head of a Government controlled corporation; or

(F) an adjutant general designated by the Secretary concerned under section 709(c) of title 32;

(2) engaged in the performance of a Federal function under authority of law or an Executive Act; and

(3) subject to the supervision of an individual named by paragraph (1) of this subsection while engaged in the performance of the duties of his position.

5 U.S.C. § 2105.

Under this definition, Klaskala does not meet the definition of employee for the purposes of CSRA. For the purposes of this motion, the parties agree that Klaskala was appointed and that his appointment was to begin in July 1992. Both parties also agree that the appointment was withdrawn on or about May 19, 1991, which was approximately 1½ months before Klaskala was to enter onto duty. Since he had not commenced service under his appointment, Klaskala does not meet the definition of employee because he has not fulfilled the requirements of § 2105(a)(2) and (3). Therefore, Klaskala is not entitled to relief under the CSRA.[3] *See,*

---

(ii) in the United States Postal Service or Postal Rate Commission; and
(C) an individual in the excepted service (other than a preference eligible)—
(i) who is not serving a probationary or trial period under an initial appointment pending conversion to the competitive service; or
(ii) who has completed 2 years of current continuous service in the same or similar positions in an Executive agency under other than a temporary appointment limited to 2 years or less

\* \* \* \* \* \*

3. Although the court in *Beacom v. EEOC*, 500 F.Supp. 428, 431 (D.Ariz.1980) indicated that an individual could claim protection under agency regulations once he was appointed, the cases

*National Treasury,* 663 F.2d at 246. Therefore, Count II of Klaskala's complaint is dismissed.[4]

### III. Count IV: Breach of Contract

■ The Court now turns to Count IV of Klaskala's complaint which is for breach of contract. This claim must fail because government employees serve by appointment, rather than by contract. *United States v. Hopkins,* 427 U.S. 123, 126, 96 S.Ct. 2508, 2511, 49 L.Ed.2d 361, 364–65 (1976); *Kizas v. Webster,* 707 F.2d 524, 535 (D.D.C.1983), *cert. den.,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984); *Shaw v. United States,* 226 Ct.Cl. 240, 640 F.2d 1254, 1260 (1981); *House v. United States,* 14 Cl.Ct. 32, 36 (1987) ("[B]arring some explicit agreement to the contrary entered into by a federal officer having authority to contract, federal personnel do not have contractual relationships with the Government."). Klaskala has not alleged any facts that take his position out of the general rule. In fact, throughout his complaint, Klaskala has requested relief "compelling the Defendant to reinstate Plaintiff to his two-year appointment." The majority of the letters attached to the complaint also refer to Klaskala's position as an appointment. As a result, contract principles are not applicable in determining Klaskala's rights as a federal appointee. *See Kizas,* 707 F.2d at 535; *Shaw,* 640 F.2d at 1260; *House,* 14 Cl.Ct. at 36. Rather, the rule governing federal appointees applies. As stated above, government appointments are generally revocable at the will of the appointing officer at any time before the appointee actually enters on

to duty. *National Treasury,* 663 F.2d at 247. Therefore, Count IV of Klaskala's complaint must be dismissed.[5]

### V. Counts I and III: Violations of the Fifth Amendment and Estoppel

The Court will now address Counts I and III of Klaskala's complaint which asserts violations of the Fifth Amendment and Estoppel.

### A. Sovereign Immunity

■ As a preliminary matter, the Court notes that it has jurisdiction over these claims because the government has waived its sovereign immunity with respect to them.

■ Klaskala has sued the HHS which is the same as suing the United States. Craig, et al., *Civil Actions Against the United States: Its Agencies, Officers and Employees* (McGraw–Hill, Inc. Second Edition 1992). Under the doctrine of sovereign immunity, the United States cannot be subject to suit unless it has so consented. *Rosser v. United States,* 9 F.3d 1519, 1521 (11th Cir. 1993); *Orange Ridge, Inc. v. State of Florida,* 696 F.Supp. 600, 603 (S.D.Fla.1988). The Fifth Amendment of the United States Constitution does not itself waive the sovereign immunity of the United States. *Orange Ridge,* 696 F.Supp. at 603.

However, the United States has waived its sovereign immunity for constitutional violations committed by a government agency under the provisions of the Administrative Procedure Act ("APA"). 5 U.S.C. § 701, et seq.; *Webster v. Doe,* 486 U.S. 592, 603, 108

relied upon by that Court did not analyze the differences between federal appointees and federal employees and all of those cases involved employees who were on active duty with the government. *See, Vitarelli v. Seaton,* 359 U.S. 535, 536, 79 S.Ct. 968, 971, 3 L.Ed.2d 1012 (1959) (plaintiff was on duty for two years as an employee of the Department of Interior before his termination); *Toohey v. Nitze,* 429 F.2d 1332 (9th Cir.1970), *cert. den.,* 400 U.S. 1022, 91 S.Ct. 585, 27 L.Ed.2d 633 (1971) (probationary employee with the Department of Navy); *Settle v. Brown,* 345 F.Supp. 405 (S.D.Tex.1972) (probationary employee with the EEOC).

4. The Court also notes that if the CSRA were applicable to Count II, it appears that this Court

would not have jurisdiction because the administrative scheme set forth in the CSRA, which includes limited judicial review before the Court of Appeals for the Federal Circuit, would have been Klaskala's exclusive remedy. Vaughn, Robert G., *Merit Systems Protection Board: Rights and Remedies,* (Law Journals Seminars–Press 1984 & 1994 Supp).

The Court also notes that since the CSRA does not apply to Klaskala's claims, his other claims are not preempted.

5. The Court also notes that even if Count IV stated a cause of action, the Claims Court would have jurisdiction over the claim since Klaskala has requested more than $10,000. 28 U.S.C. §§ 1346(a)(2) and 1491 ("Tucker Act").

S.Ct. 2047, 2054, 100 L.Ed.2d 632, 644–45 (1988) (discharge of employee by CIA was reviewable pursuant to APA when discharged employee asserted that termination was in violation of First, Fourth, Fifth and Ninth Amendments). In addition, since Klaskala is essentially asserting that he suffered a legal wrong due to a decision by the HHS, grounds for a waiver of sovereign immunity as to the estoppel claim may also be based on the APA.

■ Under the APA, litigants can only obtain equitable relief.[6] Therefore any suit for money damages cannot be maintained against the government pursuant to the APA.

Therefore, this Court will analyze the Estoppel claim and the Fifth Amendment cause of action, but instructs plaintiff that he must proceed before the Federal Claims Court if he wishes to obtain a money judgment against the government.[7]

### B. Due Process/Liberty Interests

■ In order to state a claim that Klaskala was deprived of liberty in violation of his due process rights, he must show (1) that his status was altered in a tangible way and (2) that an imposition of stigma or injury to reputation accompanied this change in status. *Campbell v. Pierce County*, 741 F.2d 1342, 1344 (11th Cir.1984), *cert. den.*, 470 U.S. 1052, 105 S.Ct. 1754, 84 L.Ed.2d 818

(1985); *U.S. Information Agency v. Krc*, 905 F.2d 389, 397 (D.C.Cir.1990); *Doe v. Department of Justice*, 753 F.2d 1092, 1102 (D.C.Cir.1985). His liberty interest is grounded in his post-appointment reputation, rather than any right to continued employment with HHS. *Doe*, 753 F.2d at 1102, citing, *Board of Regents v. Roth*, 408 U.S. 564, 573, 92 S.Ct. 2701, 2707, 33 L.Ed.2d 548, 558–59 (1972). The right does not require that the injured party have a property right in continued employment with the government. *Doe*, 753 F.2d at 1107. The remedy of such an action is a name clearing hearing. *Campbell*, 741 F.2d at 1345; *Roth*, 408 U.S. at 573 n. 12, 92 S.Ct. at 2707 n. 12, 33 L.Ed.2d at 558; *Doe*, 753 F.2d at 1102.

Under the allegations of the complaint taken most favorably towards Klaskala, he has stated a cause of action. *See Campbell*, 741 F.2d at 1346 (summary judgment granted against discharged employee for claim of liberty interest based on 42 U.S.C. § 1983 when it was undisputed that employee had an adequate name clearing hearing); *Roth*, 408 U.S. at 573, 92 S.Ct. at 2707, 33 L.Ed.2d at 558–59 (court indicated that a state's actions may implicate liberty rights of an individual if the state wrongfully damaged the individual's standing and associations in the community); *Doe*, 753 F.2d at 1107 (court did not dismiss complaint of attorney employed by the Department of Justice when she was discharged

---

6. There is a current debate in the Courts about whether back pay is classified as an equitable form of relief which would be permissible under the provisions of the APA or whether it is a money damages form of relief which would be precluded under the APA. Since the Eleventh Circuit has not given any clear direction in this matter, on the facts of this case, this Court would classify back pay as a money damages form of relief pursuant to the reasoning of *Watkins v. Bessemer State Tech. College*, 782 F.Supp. 581, 583 (N.D.Ala.1992), citing, *Bowen v. Massachusetts*, 487 U.S. 879, 108 S.Ct. 2722, 101 L.Ed.2d 749 (1988). However, the Court also notes that back pay for an employee who has actually worked, but has not been paid for those services may be analyzed differently than an award of back pay in the case at bar. *See Hubbard v. Administrator*, 982 F.2d 531, 533 n. 4 (D.C.Cir. 1992).

In Count I, Klaskala requested reinstatement and damages. However, to the extent that his complaint can be construed to be requesting back pay, this Court finds that such relief is not

available to him under his Due Process claim pursuant to the provisions of the APA.

7. In addition, the Court notes that any claim under the Fifth Amendment that is pursued before the Claims Court must be under the "takings clause" of the Fifth Amendment. *United States v. Riverside Bayview Homes, Inc.*, 474 U.S. 121, 129, 106 S.Ct. 455, 460, 88 L.Ed.2d 419, 427–28 (1985); *Golden Pacific Bancorp v. United States*, 15 F.3d 1066, 1071 (Fed.Cir.1994), *cert. den.*, —— U.S. ——, 115 S.Ct. 420, 130 L.Ed.2d 335 (1994); *Marshall Leasing, Inc. v. United States*, 893 F.2d 1096, 1101 (9th Cir.1990) (district court did not dismiss constitutional claims that DEA actions violated Due Process Clause of the Fifth Amendment because such claims could be litigated pursuant to the APA, but court did dismiss constitutional claim that DEA actions violated the takings clause of the Fifth Amendment because proper remedy was for money damages before the Court of Claims under the Tucker Act).

amidst allegations of unprofessional conduct without any meaningful opportunity to contest those allegations or clear her name).

## C. Due Process/Property Interests And Estoppel

■ For Klaskala to prevail on his allegations that he was deprived of property in violation of his due process rights, he must show (1) that he had a protected property interest and (2) he was not afforded appropriate notice or an opportunity to be heard to protect that interest. *Roth,* 408 U.S. at 570, 92 S.Ct. at 2705, 33 L.Ed.2d at 556–57. To have a protected property interest, a person must clearly have a legitimate entitlement to it. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 560–61. Moreover, such property interests are defined by existing rules or understandings that stem from an independent source such as state law. *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709, 33 L.Ed.2d at 560–61. Under this theory, Klaskala's remedy is notice and some type of hearing. *Campbell,* 741 F.2d at 1344. In order to state a claim that he was deprived of substantive due process, Klaskala must establish the following: (1) he has a constitutionally protectible property interest and (2) he was arbitrarily and capriciously deprived of his property interest. *Reserve,* 17 F.3d at 1379.

■ The general rule is that federal appointees do not possess a property right in government employment because government appointments are generally revocable at the will of the appointing officer. *National Treasury,* 663 F.2d at 247.

■ However, federal cases have indicated that circumstances giving rise to estoppel can create a property right where one would not otherwise exist. *Reserve, Ltd. v. Town of Longboat Key,* 17 F.3d 1374, 1380 (11th Cir. 1994), *cert. den.,* —— U.S. ——, 115 S.Ct. 729, 130 L.Ed.2d 633 (1995) (although it is the general rule under Florida law that a landowner has no property interest in a building permit, when circumstances that give rise to an estoppel claim are present, the landowner will be found to have such a property interest in the building permit). In addition, other federal courts have analyzed the revocation of federal appointments under the standards of estoppel.

Estoppel is "an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Community Health Services,* 467 U.S. 51, 59, 104 S.Ct. 2218, 2223, 81 L.Ed.2d 42, 51–52 (1984). The question of whether estoppel is ever available against the government is unresolved, but the Supreme Court has definitively ruled that no estoppel claim can be asserted against the government for the payment of money from the Public Treasury contrary to statutory appropriation. *Office of Personnel Management v. Richmond,* 496 U.S. 414, 423–25, 110 S.Ct. 2465, 2471, 110 L.Ed.2d 387, 398–99 (1990), *reh. den.,* 497 U.S. 1046, 111 S.Ct. 5, 111 L.Ed.2d 821 (1990) ("But it remains true that we need not embrace a rule that no estoppel will lie against the government in any case in order to decide this case. We leave for another day whether an estoppel claim could ever succeed against the Government. A narrower ground of decision is sufficient to address the type of suit presented here, a claim for payment of money from the Public Treasury contrary to statutory appropriation"); *Ferry v. Hayden,* 954 F.2d 658, 661 (11th Cir.1992).

■ Courts which have considered the revocation of federal employees have articulated the following estoppel test: (1) The party to be estopped must know the facts; (2) he must intend that his conduct shall be acted upon or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; (4) he must rely on the former's conduct to his injury; and (5) he must establish affirmative misconduct on the part of the government. *Beacom v. EEOC,* 500 F.Supp. 428, 435 (D.C.Ariz.1980); *Pratte v. NLRB,* 683 F.2d 1038, 1041 (7th Cir.1982); *National Treasury,* 663 F.2d at 249–250. The Eleventh Circuit has applied a slightly different test for estoppel outside the federal employment context. It is as follows: (1) the government must have acted in its proprietary capacity rather than in its sovereign capacity; (2) the traditional elements of estoppel must be present; and (3) the government officer or agent making the representation relied on must have acted within

the scope of his authority. *United States v. Killough*, 848 F.2d 1523, 1526 (11th Cir.1988).

Three federal cases have applied the doctrine of estoppel in cases similar to the case at bar. First, the court in *Beacom v. EEOC,* found that the government was estopped from denying a federal appointee his position as trial attorney with the EEOC. In *Beacom,* the plaintiff (Beacom) was an attorney in private practice in Colorado. Beacom received an appointment with the EEOC which was to begin on April 7, 1980. Beacom accepted his appointment and, with the knowledge of EEOC officials, Beacom began to wind down his private practice in which he had been engaged for the past sixteen years. *Id.* at 430. In March 1980, Beacom heard a speech by President Carter in which the President announced that there was an immediate hiring freeze. *Id.* at 431. Beacom telephoned the EEOC to determine whether or not the freeze would affect his position. He was informed it would not. In reliance on this, Beacom continued to wind down his practice. *Id.* On April 3, 1980, an EEOC official attempted to reach Beacom to inform him that his position could not be filled. *Id.* Because there was no answer at Beacom's home, Beacom never received this telephone call and was not aware of the fact that his position was no longer available. On April 7, 1980, Beacom arrived at work at the Arizona EEOC office and was informed that he did not have a position with the Commission. *Id.* Under these circumstances, the Court found that the government was estopped to deny Beacom his position.

Second, in *National Treasury Employees v. Reagan,* the court found that estoppel was not present based on the general facts of a class action suit, but remanded plaintiffs' estoppel claims and Fifth Amendment claims to the district court to determine if certain individuals within the class could establish viable causes of action. *National Treasury,* 663 F.2d at 249 n. 17. In *National Treasury,* several federal appointees had been informed that they no longer had jobs due to a hiring freeze. The Court found that all the employees had been appointed, but that mere appointments did not establish a right to federal employment or protection under the

CSRA. Rather, the court found that in order to be accorded rights under the CSRA, the appointee must also have entered onto duty prior to a revocation of the appointment. *Id.* at 246. If the employee was able to enter onto duty, then he was entitled to statutory protection. *Id.* at 248. If the appointee received revocation prior to entering onto duty, the revocation was effective and the appointee was not entitled to statutory protection under the CSRA. *Id.* at 246. However, the court left open that certain of these appointees could be entitled to nonstatutory protection arising under the Fifth Amendment and the theory of estoppel.

Third, in *Pratte v. NLRB,* the Court did not find estoppel. In *Pratte,* a Harvard Law School graduate had obtained an appointment to work for the National Labor Relations Board ("NLRB") in Chicago in January 1981. One week after accepting the appointment, the NLRB telephoned to inform Pratte that her appointment had been revoked due to a hiring freeze. *Id.* at 1039. In March 1981, the NLRB again telephoned Pratte to inform her that the position in which she was interested had again become available. *Id.* at 1040. Pratte accepted the position. As Pratte intended to eventually practice in Washington, D.C., she took the D.C. Bar exam even though her appointment with the NLRB was in Illinois. On September 11, 1981, Pratte purchased an automobile and drove to Illinois. *Id.* On September 29, 1981, the EEOC told Pratte to report to work on October 5, 1981. Also on September 29, 1981, Pratte leased an apartment. That evening, the NLRB again telephoned Pratt to inform her that a second hiring freeze had been imposed and that her position was no longer available. *Id.* In this instance, the court did not find estoppel and denied Pratte relief for the harms she had suffered. The court distinguished this case from *Beacom* because in *Pratte* the NLRB had consistently informed Pratte of her status in light of the information it had available at the time. In contrast, in *Beacom,* the plaintiff had been misled to believe his appointment was not jeopardized by the hiring freeze even though the EEOC had information to the contrary. *See also, Heisler v. FSLIC,* 555 F.Supp. 1011, 1013 (N.D.Ill.1983), *aff'd. without opinion,*

735 F.2d 1366 (7th Cir.1984) (no estoppel found in case where there was no actual appointment and prospective appointee was familiar with government procedures and understood that person who made representations regarding employment did not have authority to do so).

 Although claims of this type are rarely successful, the Court is not inclined to dismiss Klaskala's Fifth Amendment or Estoppel claims at this early stage of the proceedings. Based on the present record, the Court cannot agree that Klaskala can prove no set of facts which would entitle him to relief. Therefore, the Court **DENIES** defendant's motion to dismiss counts I and III of the complaint.

### IV. Freedom of Information Act

The Freedom of Information Act ("FOIA") allows for civil actions against federal agencies to compel the release of documents which are improperly withheld. 5 U.S.C. § 552(a)(4)(B). From the record presently before the Court, it is impossible to determine whether or not compliance has been obtained. In Footnote 3 of Defendant's Reply to Response to Defendant's Motion to Dismiss (DE 11), the HHS states that it will make available for review and copying the originals of the documents that were produced to Klaskala in his FOIA request. The Court therefore orders that Klaskala and the HHS arrange for such a viewing on or before July 15, 1995. Klaskala shall submit to the Court a pleading on or before July 30, 1995 which indicates the results of this viewing. If after viewing the documents, Klaskala is satisfied with the production, he should arrange with the HHS to file a Stipulation of Dismissal of Count V of his complaint. If he believes that there are continued deficiencies in the production, Klaskala shall file a motion with the Court requesting further relief. At that time, the Court may require additional evidence from the HHS setting forth documents that were withheld from production and the grounds for such non-disclosure. *See, Miscavige v. I.R.S.*, 2 F.3d 366, 367 (11th Cir.1993), *citing to, Vaughn v. Rosen*, 484 F.2d 820 (D.C.Cir.1973), *cert. den.*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873

(1974). In light of the above, the Court **DENIES** Count V of Klaskala's complaint.

### CONCLUSION

In light of the above, it is hereby

**ORDERED AND ADJUDGED** that Defendant's Motion to Dismiss (DE 9) is DENIED IN PART AND GRANTED IN PART. Dismissal is GRANTED as to Counts II and IV. Dismissal is DENIED as to Counts I, III and V. It is further

**ORDERED AND ADJUDGED** that Klaskala and the HHS shall arrange for a viewing of original documents as described above on or before July 15, 1995. If after viewing the documents, Klaskala is satisfied with the production, he should arrange with the HHS to file a Stipulation of Dismissal of Count V of his complaint. If he believes that there are continued deficiencies in the production, Klaskala shall file a motion with the Court requesting further relief. Klaskala must file the Stipulation or Motion with the Court on or before July 30, 1995. At that time, the Court may require additional evidence from the HHS setting forth the identity of documents that were withheld from production and the grounds for such non-disclosure.

**DONE AND ORDERED.**