291 So.2d 608 (1974)
DATA LEASE FINANCIAL CORPORATION, Etc., Petitioners,
v.
Arnold BARAD et al., Respondents.
No. 44437.
Supreme Court of Florida.
February 13, 1974.
Rehearing Denied March 19, 1974.
*610 John R. Young of Hamilton, James, Merkle & Young, West Palm Beach, for petitioners.
Larry Klein of Cone, Wagner, Nugent, Johnson & McKeown, West Palm Beach, for respondents.
R. Larry Defrances, Tallahassee, for amicus curiae, Fred O. Dickinson, Jr.
DEKLE, Justice.
This cause comes before us pursuant to petition for certiorari and certified questions of law from the Fourth District Court of Appeal. We have jurisdiction pursuant to Art. V, § 3(b)(3), F.S.A.
The factual situation involved in this action is somewhat complex. In broad outline, however, it involves a corporate transaction between petitioner Data Lease Financial Corporation (hereafter called "Data Lease") and Discount Drugs, Inc. (hereafter "Discount") and the officers and shareholders of each. After lengthy negotiations, a contract was signed providing, inter alia, that Data Lease would acquire Discount and in return would issue to the stockholders of Discount an appropriate number of shares of Data Lease. The contract provided for numerous other matters, including a provision for future registration of the Data Lease stock issued to Discount shareholders, certain employment rights of the selling shareholders of Discount, and a provision calling for respondents (the selling shareholders of Discount, hereafter sometimes referred to as "the Barads") to participate in a subsequent new public offering of Data Lease stock to the extent of 4/9 of their stock in Data Lease. The contract was so drawn as to provide for a tax-free reorganization of Discount pursuant to § 368 (a)(1)(B), Internal Revenue Code, and the reorganization of Discount did in fact qualify for such tax treatment.
The Barads brought suit to void the transaction under Ch. 517, Fla. Stat. F.S.A., (our Blue Sky Law), for Data Lease's failure to register the stock given in exchange for Discount. It is conceded that this stock which was issued to the Barads for Discount was never registered. The Barads maintain that it should have been, and that failure to register it was grounds under the statute for voiding the transaction; the lower courts have so held. Data Lease contends that the transaction was exempt under F.S. § 517.06, F.S.A., and that in any event the Barads are estopped by virtue, inter alia, of their acceptance of employment benefits under the contract and by the fact that the Barads did not participate in a subsequent new public offering but did purchase additional Data Lease stock at that time. The Barads refrained from participating in the subsequent new Data public offering at the written urgings of counsel for Data Lease not to do so. The employment involved was in connection with the management of Discount, which prior to the transaction was a closely-held corporation of the Barads.
The Fourth District Court of Appeal certified the following questions to us:
(A) Whether a corporate reorganization recognized for the purpose of Section 368(1)(b) [368(a)(1)(B)], Internal Revenue Code, qualifies as a "bona fide reorganization of such corporation" within the meaning and intent of Chapter 517.06(4), Florida Statutes, F.S.A.
(B) Whether a stock transaction wherein one corporation issues securities *611 to the security holders of another corporation in the process of a bona fide reorganization of such corporation (the second corporation) made in good faith, and not for the purpose of avoiding the provisions of this chapter, is an exempt transaction as a matter of law under Section 517.06(4) and/or Section 517.06(6), Florida Statutes, F.S.A.
(C) Whether within the meaning and intent of Section 517.06(4), Florida Statutes, F.S.A., the corporation issuing exempt securities must in fact and law be the same corporation undergoing a "bona fide reorganization" and that the issuance of such securities, if they are to be exempted, must be to existing security holders of the same corporation issuing the securities in question.
The relevant portions of F.S. § 517.06 states:
"517.06 Exempt transactions
Except as hereinafter expressly provided, the provisions of this chapter shall not apply to the sale of any security described in any of the following transactions:
"(4) ... or the issuance of securities to the security holders or other creditors of a corporation in the process of a bona fide reorganization of such corporation made in good faith and not for the purpose of avoiding the provisions of this chapter, either in exchange for the securities of such security holders or claims of such creditors or partly for cash and partly in exchange for the securities or claims of such security holders or creditors... .
* * * * * *
"(6) The issue, transfer, or exchange of securities from one corporation to another corporation or to security holders thereof pursuant to a vote of such security holders as may be provided by the certificate of corporation and the applicable corporate statutes in connection with mergers, consolidations, or sale of corportae assets."
Inasmuch as a holding that respondents were estopped to raise the lack of registration would remove the necessity to consider the other points raised, we consider it first. Although waiver and estoppel were among the many defenses raised in the trial court, the trial judge did not expressly rule upon them. However, the trial judge, acting as trier of fact in this nonjury case, did rule generally against the petitioner. Where numerous defenses are raised, it is not necessary, although it is certainly preferable, for the trial judge to rule expressly upon each defense asserted. In the absence of such express ruling, it is presumed that the matter was resolved in a manner consistent with the judgment rendered, in accordance with the general presumption of correctness of judgments. Miami Bank & Trust Co. v. Frank T. Budge Co., 107 Fla. 581, 145 So. 192 (1933); White v. Crandall, 105 Fla. 70, 137 So. 272, 143 So. 871 (1932); Tanner v. Batson, 123 Fla. 240, 166 So. 545 (1936); Dade County v. Pepper, 168 So.2d 198 (Fla.App.3d 1964). A presumption exists that the lower court did all things necessary to impart binding force to its judgment. White v. Crandall, supra, which in this cause necessarily includes determining the issues raised by the defense of estoppel. As we noted in City of Winter Haven v. A.M. Klemm & Son, 132 Fla. 334, 181 So. 153 (1938), judgments should be so interpreted as to effectuate their intended purpose consistent with applicable provisions of law. We conclude, in these circumstances, that the trial judge inherently ruled adversely to petitioner on the question of estoppel.
A finding that the facts do not support an estoppel is supported by the *612 record. Even though the Barads did get some benefit (employment rights) under the contract, and did decide not to participate in the public offering, they did not participate in the management of Data Lease after acquiring the stock or commit any other acts which would support an estoppel to raise the defense of nonregistration. It must be remembered that the main intent of Ch. 517 is to protect investors by requiring registration which will provide potential investors with sufficient information to enable them to protect themselves. The instant action was not an equitable suit for recision, but was brought to void the transaction under a statute specifically requiring registration and making sales of unregistered stock voidable where statutory requirements are not met. In such a situation, estoppel is applicable only where the purchaser himself is in pari delicto, participates in the management of the issuing corporation, or where some unusual circumstances exist justifying application of the doctrine of estoppel. Krasny v. Richter, 211 So.2d 612 (Fla.App.3d 1968); Harrison v. McCourtney, 148 So.2d 53 (Fla.App.2d 1963); Popper v. Havana Publications, Inc., 122 So.2d 247 (Fla.App.3d 1960); Henderson v. Hayden, Stone Inc., 461 F.2d 1069 (CA5 1972) (applying Florida law). Such is not the case here.
We therefore proceed to the other points raised. The next question is whether a corporate reorganization qualifying for tax-free treatment under § 368(a)(1)(B), Internal Revenue Codes, necessarily qualifies as a "bona fide reorganization of such corporation" within the meaning of F.S. § 517.06(4), F.S.A. We hold that it does not. The purposes of the Internal Revenue Code "reorganization" are distinctly different than those of the reorganization contemplated by § 517.06(4). This does not mean that a corporate reorganization recognized under this Internal Revenue Code provision cannot be within the meaning of the term "reorganization" as used in § 517.06(4); only that it is not necessarily within the meaning of the exemption of § 517.06(4). The exemption under our Blue Sky Law must be determined by application of our own statutes, not by seeing if the transaction falls within the meaning of a tax code provision.
Is a stock transaction wherein one corporation issues unregistered stock to the stockholders of a second corporation, which is in the process of a bona fide reorganization, an exempt transaction under F.S. § 517.06(4), F.S.A.? We hold that it is not. The applicable portion of the statute exempts "the issuance of securities to the security holders or other creditors of a corporation in the process of a bona fide reorganization of such corporation." If we accept petitioner's contention that the issuance of its (Data Lease) stock is exempt if the "second" corporation (Discount) is undergoing a reorganization, absurd results follow. Thus, under petitioner's interpretation, if A owns stock in Corporation X, which is undergoing reorganization, and purchases unregistered stock from Corporation Y, the exemption would apply as to his purchase of stock in Corporation Y. It is to the reorganizing corporation ("X") that the exemption applies.
The registration statute was passed during a period of economic depression when many corporations were being reorganized. It was this factor which was undoubtedly in the mind of the Legislature when it enacted this exemption provision. The provision is clearly aimed at an issuance by a corporation undergoing reorganization of its stock to its own shareholders. Viewed thusly, the exemption harmonizes with the overall protective design of the chapter, since those who currently own stock in a corporation do not need those protections afforded by registration when corporate reorganization is involved; no new investment of their capital is involved in such case, not would a registration requirement *613 be of any benefit to them. Thus, the exemption of F.S. § 517.06(4) F.S.A. is inapplicable where the issuing corporation is not the corporation undergoing the reorganization.
This leaves, then, only the asserted exemption of F.S. § 517.06(6), F.S.A., applicable "in connection with mergers, consolidations, or sale of corporate assets." Each of these three terms has a defined legal meaning; both "consolidation" and "merger" involve the dissolution of a participating corporation. In the instant case, both of the corporations involved continued their existence after completion of the transaction, hence there could be no consolidation or merger. Nor was there a sale of corporate assets. What was involved was a corporate acquisition, a sale of all outstanding securities of one corporation to another corporation, in consideration of which the purchasing corporation issued to the sellers its own securities. This transaction does not fall within the exemption of F.S. § 517.06(6), F.S.A.
The questions certified are answered as follows:
(A) A corporate reorganization for purposes of § 368(a)(1)(B), Internal Revenue Code, does not necessarily qualify as a "bona fide reorganization of such corporation, F.S.A." within the meaning and intent of F.S. § 517.06(4), F.S.A., the question of exemption under that provision being determined by state law.
(B) A stock transaction wherein one corporation issues securities to the security holders of another corporation, which such other corporation is in the process of a bona fide reorganization made in good faith and not for the purpose of avoiding the provisions of Chapter 517, is not an exempt transaction as a matter of law under F.S. §§ 517.06(4) and/or 517.06(6), F.S.A.
(C) Within the meaning and intent of F.S. § 517.06(4), F.S.A., the corporation issuing exempt securities must in fact and law be the same corporation undergoing a "bona fide reorganization" and the issuance of such securities if they are to be exempted, must be to existing security holders of the same corporation issuing the securities in question.
Having determined that respondent is not estopped to raise the issue of non-registration and that neither the exemption provisions of F.S. § 517.06(4), F.S.A., nor those of F.S. § 517.06(6), F.S.A., are applicable to the instant transaction, we find that the decision of the court below is correct. Its certification is answered as herein set forth.
It is so ordered.
ADKINS, BOYD and McCAIN, JJ., concur.
ERVIN, Acting C.J., dissents with opinion.
ERVIN, Acting Chief Justice (dissenting):
I think the first two certified questions should be answered in the affirmative and the third in the negative.
As will be perceived by a careful reading of the majority opinion, the stock transfers in this instance between Data Lease Financial Corporation and Discount Drugs, Inc., did not involve a public offering of stock to Discount Drugs, Inc., or its officers or stockholders requiring compliance with the protective provisions of the Florida Securities Act, F.S.Ch. 517, F.S.A.
The transaction between the two corporations, Data Lease and Discount Drugs, *614 was, a "closed" or private one providing for the stock transfers, corporate reorganization, and merger for the mutual contractual objectives stipulated, including the securance of tax advantages. The "closed" transaction being so handled was exempt under the Florida Securities Act.
It appears to me that the Securities Act has been improperly seized upon and used here to void a private contract between two sui juris corporate entities. It would have been the better part of judicial wisdom to have left the parties to litigate their dispute as a private transaction relegating it to a determination of whether there was breach of contract, fraud, or other invalidating private basis without injection of the claim that the Florida Securities Act supervened and voided the performance of the contarct between the two firms.
As I understand it, the Florida Securities Act traditionally has not been applied as has been done in this case.