Pursuant to the memorandum filed herein this day,

**IT IS HEREBY ORDERED** that plaintiff's motion to file an amended complaint be and is denied.

**IT IS FURTHER ORDERED** that plaintiff be and is granted leave to file an amended complaint which asserts additional damages under the Rehabilitation Act only and which adds Clyde Miener as a party plaintiff. Said amended complaint may also revive plaintiff's pendent state claim for personal injuries.

**IT IS FURTHER ORDERED** that defendants' motions to dismiss plaintiff's complaint be and are denied.

Richard **EATON**, Plaintiff,

v.

**COAL PAR OF WEST VIRGINIA, INC.,**
et al., Defendants.

No. 82–8491–CIV–JAG.

United States District Court,
S.D. Florida, N.D.

Feb. 13, 1984.

John Stetson, West Palm Beach, Fla., for plaintiff.

Gary Dumas, Stroock & Stroock & Lavan, Miami, Fla., Charles Franken, Fort Lauderdale, Fla., Robert Hackney, West Palm Beach, Fla., Jay Reynolds, Steven Warm, Boca Raton, Fla., for defendants.

## ORDER

GONZALEZ, District Judge.

### I. *Background*

In February 1981, plaintiff Richard Eaton viewed defendant Dale Jackson discussing financial investments on a television program. Eager to establish an immediate cash flow to satisfy his alimony payments, Mr. Eaton paid Mr. Jackson a visit in the brokerage office of the latter's employer, First Florida Securities, Inc. ("FFS"). Attracted by alleged promises that his investment would return $40,000 per month, on March 13, 1981 Mr. Eaton purchased eight promissory notes totaling $200,000 issued by defendant Coal Par of West Virginia, Inc. ("Coal Par"). Coal Par was to use the proceeds from the sale of the notes for the mining and marketing of coal. Instead of paying Mr. Eaton the interest, Coal Par was to pay him a royalty of $0.10 per ton of coal mined until the termination of the program. Amended Complaint ¶¶ 14–18, 22 (filed Sept. 19, 1983).

Much to Mr. Eaton's dismay, as time progressed there proved to be a substantial disparity between the promised and the actual return. Rather than realize a return of $40,000 per month, plaintiff claims to have received barely $12,000 in over two years, a return of only $600 per month. *Id.*

¶ 22(a), (g).[1] Plaintiff has turned to this Court in an attempt to recoup his losses.

In addition to naming Mr. Jackson, FFS, and Coal Par as defendants, Mr. Eaton also has sued the three top officers in Coal Par: President Sergio Oliver, Vice-President David Reed, and Secretary-Treasurer Patrick Shepherd. Plaintiff has filed a nine count Amended Complaint, which breaks down into four general areas. Counts 1, 4, 5, and 6 allege statutory or common-law fraud; counts 2, 3, and 9 charge defendants with securities law violations flowing from their failure to register the Coal Par offering; and counts 7 and 8 charge only defendant FFS with failing to comply with an administrative rule promulgated by the Florida Department of Banking and Finance, and negligence, respectively. This Court has subject matter jurisdiction by virtue of the federal questions presented. Jurisdiction over the state claims is made possible by the doctrine of pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In response to plaintiff's Amended Complaint, defendants have filed motions to dismiss. Additionally, defendant Reed has filed a cross-claim for indemnification or contribution, which defendants FFS, Oliver, and Jackson oppose.

In reviewing the defendants' motions to dismiss, the Court is cognizant that plaintiff's various actions "should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *McKinnis v. Mosley*, 693 F.2d 1054, 1058 (11th Cir.1982) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957)).

## II. *Sufficiency of Allegations Sounding in Fraud*

Plaintiff's statutory and common-law fraud claims require different allegations. Section 12(2) of the Securities Act of 1933, 15 U.S.C.A. § 77*l*(2) (1981),[2] is a broad anti-fraud provision that permits a purchaser of a security to recover against his immediate seller for false or misleading statements. Supplementing[3] the prohibitions of

---

**1.** Mr. Eaton's claim of fraud goes beyond his obvious displeasure at having realized so little of the expected return on his investment. In his Amended Complaint, Mr. Eaton also alleges that defendants represented that the coal would sell for $16.00 to $18.00 per ton, when what little coal was sold is alleged to have been purchased for substantially less; that utilities and factories would buy the coal, but no such sales apparently have occurred; that the coal had 12,500 to 14,000 BTU, when plaintiff alleges it had less than 10,000 BTU; that the coal project was prepared to begin, when the start-up time apparently was delayed by incomplete construction. Amended Complaint ¶¶ 21–23. Plaintiff's claim of fraud also is based on alleged material omissions and misrepresentations in Coal Par's offering circular. *Id.* ¶¶ 23, 24. As this discussion makes clear, the Court finds plaintiff's claim of fraud to be based on a number of factors, only one of which is the glaring discrepancy between the promised and realized return on plaintiff's investment. Should the Court later find that plaintiff's claims are unfounded, or that plaintiff's reliance on defendants' representations was unreasonable, then dismissal of the claims sounding in fraud might be appropriate.

**2.** Section 12(2) provides:
   Any person who—

      .      .      .      .      .

(2) offers or sells a security (whether or not exempted by the provisions of section 77c of this title, other than paragraph (2) of subsection (a) of said section), by the use of any means or instruments of transportation or communication in interstate commerce or of the mails, by means of a prospectus or oral communication, which includes an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they were made, not misleading (the purchaser not knowing of such untruth or omission), and who shall not sustain the burden of proof that he did not know, and in the exercise of reasonable care could not have known, of such untruth or omission, shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.
   15 U.S.C.A. § 77*l*(2) (1981).

**3.** The limitation prescribed in section 13 of the Securities Act of 1933 for an action under section 12(2) is one year after discovery of the untrue statement, but in no event more than

section 12(2) is Rule 10b–5,[4] which implements section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j (1981).[5] As applied here, section 10(b) and Rule 10b–5 provide a purchaser with a private cause of action[6] against a seller whose sale of a security was fraudulently induced by intentional misstatements of material fact, or omissions of material facts necessary to make the statements made not misleading. *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976).

Plaintiff also charges defendants with fraud under Florida law. In count 5, plaintiff seeks rescission under section 517.-211(2), Florida Statutes, for defendants alleged violations of the anti-fraud provisions of section 517.301, Florida Statutes.[7] Finally, plaintiff charges all defendants with common-law fraud in count 6.

The allegations in counts 1, 4, 5, and 6 charge defendants with either direct participation in, or aiding and abetting, the allegedly fraudulent Coal Par scheme.

Rather than argue that plaintiff fails to plead the elements of a prima facie case of statutory or common-law fraud, defendant FFS challenges the basic sufficiency of all of plaintiff's allegations. Citing *Benoay v. Decker,* 517 F.Supp. 490 (E.D.Mich.1981), FFS contends that in a multi-defendant securities case, each defendant "must be apprised separately of the specific acts of which he is accused." *Id.* at 492. Rule 9(b) of the Federal Rules of Civil Procedure also supports FFS's position: "In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." "Thus, '[m]ere conclusory allegations of fraud, couched in the bare statutory language of the Securities Act

---

three years after the sale. The state statute of limitations applicable to an action under Rule 10b–5 will not start running until "discovery" of the fraud, no matter how long that may be. *See Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996 (5th Cir.1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975); *Bryne v. Gulfstream First Bank & Trust Company of Boca Raton,* 528 F.Supp. 692, 695 (S.D.Fla.1981).

**4.** 17 C.F.R. § 240.10b–5 (1983) provides:

It shall be unlawful for any person directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any exchange facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

**5.** Section 10(b) of the Securities Exchange Act of 1934 provides:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C.A. § 78j(b) (1981).

**6.** *Superintendent of Insurance of the State of New York v. Bankers Life and Casualty Co.,* 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 169 n. 9, 30 L.Ed.2d 128 (1971).

**7.** Section 517.301 reads:

It is unlawful and a violation of the provisions of this chapter for any person:

(1) In connection with the offer, sale or purchase of any security, including any security exempted under the provisions of s. 517.-051 and including any security sold in any transaction exempted under the provisions of s. 517.061, directly or indirectly:

(a) To employ any device, scheme, or artifice to defraud;

(b) To obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

(c) To engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

Fla.Stat.Ann. § 517.301 (West Supp.1983).

will not satisfy Rule 9(b). Rather, the allegations must be accompanied by some delineation of the underlying acts and transactions which are asserted to constitute the fraud.' " *Merrill Lynch, Pierce, Fenner & Smith v. Del Valle,* 528 F.Supp. 147, 149 (S.D.Fla.1981) (quoting *duPont v. Wyly,* 61 F.R.D. 615, 630 (D.Del.1973)).

■ After reviewing plaintiff's Amended Complaint, however, the Court finds the allegations of fraud or aiding and abetting to be sufficiently particularized, and as direct as is reasonable at this early juncture in the case. In support of his claims sounding in fraud, Mr. Eaton has alleged that FFS is a registered broker-dealer and the employer of defendant Jackson, Amended Complaint ¶ 8; in selling the Coal Par notes, Mr. Jackson was acting within the actual or apparent scope of his employment, *id.* ¶¶ 11, 59; at various times between February and November 1981, Mr. Eaton visited Mr. Jackson at FFS' office to discuss the Coal Par project, *id.* ¶¶ 15, 19, 22, 27; Mr. Jackson kept the Coal Par offering circular at FFS' office, *id.* ¶ 61; and Mr. Eaton signed the Coal Par subscription agreement at FFS' office, *id.* For additional alleged material misstatements and omissions, *see* n. 1.

These facts, if taken as true, suggest that FFS arguably participated in, or at least aided and abetted, the alleged fraud.[8] Because "the aim of the [Federal Rules of Civil Procedure is] to deemphasize the pleadings and to try the case on the proofs," C. Wright, *Law of Federal Courts* ¶ 68, at 326 (1976), the dismissal of all the fraud or aiding and abetting claims would be improvident at this time. To avoid subsequent dismissal of his claims against FFS, however, plaintiff must demonstrate that the broker/dealer was a "substantial factor," *see generally Junker v. Crory,*

650 F.2d 1349, 1360 (5th Cir.1981); *Pharo v. Smith,* 621 F.2d 656, 667 (5th Cir.1980), or rendered "substantial assistance," *see Woodward v. Metro Bank of Dallas,* 522 F.2d 84, 94–97 (5th Cir.1975), in selling the Coal Par notes.

### III. *Statute of Limitations*

Section 12(1) of the Securities Act of 1933, 15 U.S.C.A. § 77*l*(1) (1981),[9] imposes civil liability for the sale of a security in violation of section 5. As modified by section 5, section 12(1) prohibits the use of interstate commerce or of the mails to aid in the offer of sale of an unregistered security, or the sale of a registered security without delivery of a prospectus satisfying the requirements of section 10, 15 U.S. C.A. § 77j (1981).

Section 13 of the Securities Act of 1933, 15 U.S.C.A. § 77m (1981), establishes a federal statute of limitations for all civil actions under section 12(1). At one extreme, section 13 provides that a section 12(1) action must be brought within one year after a sale in violation of section 5. At the other extreme, however, a section 12(1) action may be brought as late as "three years after the security was bona fide offered to the public...."

Defendants FFS, Oliver, and Jackson contend that plaintiff's section 12(1) claim is barred by the one year period of limitations contained in section 13. Plaintiff responds that the statute of limitations is tolled by the defendants' fraudulent concealment. As explained in *Hochfelder v. Ernst & Ernst,* 503 F.2d 1100, 1119 (7th Cir.1974), *rev'd on other grounds,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976), "the equitable tolling doctrine provides that where a fraud which is the foundation of the suit has actually been concealed, ... the statute of limitations is tolled until

---

**8.** The Court's finding here necessitates the denial at this time of FFS' motion to dismiss count 5.

**9.** 15 U.S.C.A. § 77*l*(1) (1981) provides:

Any person who—

(1) offers or sells a security in violation of section 77e of this title,

shall be liable to the person purchasing such security from him, who may sue either at law or in equity in any court of competent jurisdiction, to recover the consideration paid for such security with interest thereon, less the amount of any income received thereon, upon the tender of such security, or for damages if he no longer owns the security.

Plaintiff has obtained knowledge of the fraud or in the exercise of due care should have obtained knowledge of the fraud." *Cf. Kennedy v. Tallant,* 710 F.2d 711, 716–17 (11th Cir.1983) (statute of limitations for § 10(b) action tolled because defendants concealed their fraudulent activities).

■ When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled. *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (9th Cir.1980). After reviewing paragraphs 26 and 27 of the Amended Complaint, the Court finds that plaintiff has alleged facts which, if true, would require application of the equitable tolling doctrine. The pleadings show that plaintiff allegedly met with defendant Jackson at FFS' office, or spoke telephonically with him, approximately once every other week between March and November, 1981. During these meetings and conversations, plaintiff alleges that he made a diligent effort to learn about the status of the Coal Par project, but defendants alleged fraudulent concealment of the facts surrounding the project stymied his efforts.[10] Accordingly, defendants' motions to dismiss because plaintiff's section 12(1) claim is barred by the statute of limitations is denied.

## IV. *Private Right of Action Under Fla.Stat. § 517.03(1)*

■ In count 7, plaintiff seeks to bring a private cause of action against FFS for allegedly failing to comply with Rule 3E–600.14(6) [11] as promulgated by the Florida Department of Banking and Finance pursuant to section 517.03(1), Fla.Stat.Ann. (West Supp.1983).[12] Rule 3E–600.14(6) requires that all broker/dealers establish and keep current a set of written supervisory procedures and a system for implementing such procedures which may reasonably be expected to prevent and detect violations of the Florida Securities Act and the rules promulgated thereunder. Plaintiff relies on *Noland v. Gurley,* 566 F.Supp. 210 Fed. Sec.L.Rep. (CCH) ¶ 99,439 (D.Colo.1983), and *Hudson v. Capital Management International, Inc.,* 565 F.Supp. 615 [1982–1983 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 99,222 (N.D.Cal.1983), as authority for the proposition that a private right of action may be implied under Rule 3E–600.-14(6). Finding these cases inapposite,[13] and finding no other support for implying a private right of action under the Rule in either the enabling statute or case law, the Court dismisses with prejudice count 7 of

---

**10.** The Court's conclusion here necessitates the denial of defendants Jackson and Oliver's motion to dismiss for failure to show reliance on material facts.

**11.** Rule 3E–600.14(6) provides:

All broker/dealers, shall establish and keep current a set of written supervisory procedures, and a system for implementing such procedures, which may be reasonably expected to prevent and detect any violations of Chapter 517, F.S., and rules thereunder. The procedures shall include the designation by name or title of those persons delegated supervisory responsibility in at least the areas of sales, financial operations, and compliance. A complete set of such procedures and systems shall be kept in all branch offices registered with this Department.

**12.** Section 517.03(1) reads:

(1) The Department of Banking and Finance shall administer and provide for the enforcement of all the provisions of this chapter. The department shall make, adopt, promulgate, amend, and repeal all rules necessary or convenient for the carrying out of the duties, obligations, and powers conferred on said department and perform any other acts necessary or convenient for the proper administration, enforcement, or interpretation of this chapter, including, without limitation, adopting rules and forms governing reports. The department shall also have the nonexclusive power to define by rule any term, whether or not used in this chapter, insofar as the definition is not inconsistent with the provisions of this chapter.

Fla.Stat.Ann. § 517.03(1) (West Supp.1983).

**13.** In *Noland,* unlike here, the district court found language in a Colorado securities law which supported an implied cause of action. Plaintiff's citation to *Hudson* is inexplicable because the court's opinion does not discuss whether a private right of action exists under California's securities laws.

plaintiff's Amended Complaint. Because this issue is one of first impression, the Court pauses at this juncture to explain in greater detail the basis for its decision.

The securities laws are designed to achieve two objectives: First, to provide potential investors with material financial and other information concerning securities offered for public sale; and second, to prohibit misrepresentation, deceit, and other fraudulent acts and practices in the sale of securities. Although the Securities and Exchange Commission, and the Florida Department of Banking and Finance,[14] administer the federal and state securities laws, respectively, the implication of private remedies sometimes is necessary to effectuate the purposes of the securities laws. *See J.I. Case Co. v. Borak,* 377 U.S. 426, 432, 84 S.Ct. 1555, 1559, 12 L.Ed.2d 423 (1964).

"The question of whether a statute creates a cause of action, either expressly or by implication, is basically a matter of statutory construction." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979). In *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), the Supreme Court set forth four factors that it considered "relevant" in determining whether a private remedy is implicit in a statute not expressly providing one. These factors included (1) whether plaintiff is one of the class for whose especial benefit the statute was enacted; (2) whether there is any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one; (3) whether it is consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff; and (4) whether the cause of action is one traditionally relegated to state law.

In *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979), the Court streamlined the *Cort* test, indicating that the "central inquiry" is legislative intent. *See also Transamerica,* 444 U.S. at 23, 100 S.Ct. at 249; *Alabama Federal Savings and Loan Association v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 680 F.2d 1384, 1386 (11th Cir.1982). The Eleventh Circuit has intimated that the first of the four *Cort* factors also is to be applied, the focus being "on the 'right- or duty-creating language' of the statute as the 'most accurate indicator of the propriety of the implication of a cause of action.'" *Local Division 732, Amalgamated Transit Union v. Metropolitan Atlanta Rapid Transit Authority,* 667 F.2d 1327, 1333 n. 10 (11th Cir. 1982). Although plaintiff's case requires an interpretation of a state securities statute, the precepts of federal law find ready application. *See Hinnant v. American National Bank and Trust Company of Fort Lauderdale,* 406 So.2d 1206, 1208 (Fla. 4th DCA 1981); *see also Roger Rankin Enterprises, Inc. v. Green,* 433 So.2d 1248, 1249, 1250 (Fla. 3d DCA 1983) (Pearson, J., concurring).

A review of the legislative history and overall statutory scheme of the Florida Securities Act, Fla.Stat.Ann. § 517.011 et seq. (West Supp.1983) ("Act"), militates against implying a cause of action under section 517.03(1) or Rule 3E–600.14(6). *See Local Division 732,* 667 F.2d at 1335 ("[I]f the legislative history provides no clear indication one way or the other, so that clear evidence of affirmative congressional intent is lacking, we cannot infer that Congress has legislated silently.").

The Legislature enacted the Florida Securities Act "to protect the public from fraudulent and deceptive practices in the securities market." *Rudd v. State,* 386 So.2d 1216, 1218 (Fla. 5th DCA 1980); *accord Data Lease Financial Corp. v. Barad,* 291 So.2d 608, 612 (Fla.1974). Pursuant to that end, the Legislature expressly vested the Department of Banking and Finance with authority under section 517.03(1) to bring an action in the name and on

---

**14.** Originally, the Florida Legislature created and empowered the Florida Securities Commission to administer the State's Blue Sky Laws. Fla.Comp.Laws, § 6002(3) (1931). Later, the lawmakers transferred the Commission's authority to the Department of Banking and Finance. Laws of Fla., ch. 71–377, § 196 (1971); Laws of Fla., ch. 69–106, §§ 12(3), 35 (1969).

behalf of the State to enjoin violations of the Act and the rules promulgated by the Department. The Summary and Analysis of Chapter 517 provided by the House Committee on Commerce explains.

> [Section 517.03] [a]mends the present language to clarify the department's rulemaking authority. These changes expressly provide authority which has been, in the past, implicit[l]y given to the department in the area of adopting reporting rules, interpreting rules and defining terms. The bill also provides that a person who relies on the department's rules or interpretations may raise this reliance as an affirmative defense in a subsequent action.

Staff of House Comm. on Commerce, Staff Analysis and Summary of Chapter 517, at 2 (Apr. 16, 1979).

The Commerce Committee's Staff Summary and Analysis confirms that section 517.03(1) is not to be used as a litigous tool by purchasers and sellers. While reliance on the Department's rules can be used as an affirmative defense, the Committee stopped short of sanctioning a private cause of action for violations of the section or the Department's rules.

Not only has the Legislature not elected to provide a private remedy under section 517.03(1), but such relief would be superfluous and inefficient given the Department's broad enforcement powers and the already-existing extensive regulation of the securities markets. For example, section 517.161 permits the Department to revoke or suspend a previously-granted registration; section 517.191 and 517.201 empower the Department to investigate any act or practice constituting a violation of Chapter 517, and to seek injunctive or other appropriate relief, respectively; and section 517.-221 authorizes the Department to issue cease and desist orders. The import of these comprehensive enforcement powers is that the Department, and not a private investor, is the "primary beneficiary" of the Legislature's enactment of section 517.-03(1). *See Merrill Lynch, Pierce, Fenner & Smith v. Del Valle*, 528 F.Supp. 147, 150–51 (S.D.Fla.1981) (quoting *Noe v. Metropolitan Atlanta Rapid Transit Authority*, 644 F.2d 434, 437 (5th Cir.1981)).

The specific remedial provisions of the Florida Securities Act also counsel against the implication of a private cause of action under section 517.03(1). Section 517.241 is the general remedies provision of the Act, providing in pertinent part that "any person" may bring any statutory or common-law "action in any court for any act involved in the sale of securities...." Fla. Stat.Ann. § 517.241(2) (West Supp.1983).[15] Section 517.211 also provides purchasers and sellers covered by the Act with a cause of action for rescission or damages.[16] Giv-

---

**15.** Section 517.241 provides in its entirety:

(1) Any person aggrieved by a final order of the department may have said order reviewed as provided by chapter 120, the Administrative Procedure Act.

(2) Nothing in this chapter shall limit any statutory or common-law right of any person to bring any action in any court for any act involved in the sale of securities or the right of the state to punish any person for any violation of any law.

(3) The same civil remedies provided by laws of the United States for the purchaser or seller of securities under any such laws, in interstate commerce, shall extend also to purchasers or sellers of securities under this chapter.

(4) When not in conflict with the Constitution or laws of the United States, the courts of this state have the same jurisdiction over civil suits instituted in connection with the sale or offer of sale of securities under any laws of the United States as they may have under similar cases instituted under the laws of the state.

Fla.Stat.Ann. § 517.241 (West Supp.1983).

**16.** Section 517.211 is explained in the House Commerce Committee's Summary and Analysis.

[Section 517.211] [b]roadly clarifies the definition and components of the remedies available to either a purchaser *or a seller* for unlawful sale. For a registration violation under section 507.07 [sic] or section 517.12, the purchaser has the option of voiding the sale and instituting an action for recission [sic] or an action for damages.

a. Subsection (1) amends the existing language to allow a violator to make restitution of the full amount, plus interest. If the purchaser has refused to accept such an offer within 30 days *from the date of the offer,* the purchaser loses his cause of action. This

**580**

en the particularity of these remedies, it follows that the Legislature would have expressly permitted a private action under section 517.03(1) if it so desired.

Applying the maxim of statutory construction that "the more specific rule governs the general," *Bryne v. Gulfstream First Bank & Trust Co.*, 528 F.Supp. 692, 693 n. 1 (S.D.Fla.1981) (Gonzalez, J.), the Court finds that the remedial provisions discussed above are inclusive of all remedies available to private parties under Chapter 517, unless the Legislature expressly provides otherwise.

In short, the legislative framework and specific provisions of Chapter 517 do not suggest that a private cause of action can be implied from section 517.03(1). Because this section delegates rulemaking authority to the Department, the Court's conclusion necessarily requires a finding that the Florida Legislature did not intend to delegate authority to the Department to establish rules implying a private cause of action. Logically, then, a private cause of action may not legitmately be implied under Rule 3E–600.14(6).

Florida law recognizes that the Legislature has the authority to create independent bodies to act as instrumentalities of the State. *Stewart v. Mack*, 66 So.2d 811 (Fla.1953) (railroad and public utilities commission); *State ex rel. DeGaetani v. Driskell*, 139 Fla. 49, 190 So. 461 (1939) (state board of medical examiners). Among the powers delegable to an administrative agency is the authority to prescribe and enforce rules. *State Department of Citrus v. Griffin*, 239 So.2d 577, 580–81 (Fla. 1970); *State ex rel. Mason v. Rose*, 122

Fla. 413, 165 So. 347 (1936). This rulemaking power should be expressly delegated by statute, *Gardinier, Inc. v. Florida Department of Pollution Control*, 300 So.2d 75, 76 (Fla. 1 DCA 1974); *Greenberg v. Florida State Board of Dentistry*, 297 So.2d 628, 635–36 (Fla. 1 DCA), *cert. dismissed*, 300 So.2d 900 (Fla.1974), or at least reasonably inferable from its express terms, *State ex rel. Wells v. Western Union Telephone Co.*, 96 Fla. 392, 118 So. 478 (1928), and should be liberally construed so as to achieve the Legislature's objective. *4245 Corp. v. Division of Beverage*, 371 So.2d 1032, 1034 (Fla. 1 DCA 1978); *Telophase Society of Florida, Inc., v. State Board of Funeral Directors & Embalmers*, 308 So.2d 606, 608 (Fla. 2d DCA 1975), *aff'd*, 334 So.2d 563 (Fla.1976).

The Department's rulemaking authority does not include the ability to imply a private cause of action from the enabling statute. The doctrine of separation of powers provides that the Legislature decides what is the law, and the administrative body establishes guidelines to implement the statutory scheme consistent with the Legislature's objective. *See Sandegren v. State*, 397 So.2d 657, 659 (Fla.1981); *Florida Welding and Erection Service, Inc. v. American Mutual Insurance Co.*, 285 So.2d 386, 388 (Fla.1973). The Legislature could not have meant for the Department to imply a private cause of action under section 517.03(1), because the implication of such a right is a legislative or judicial prerogative, as distinguished from an administrative action.

Plaintiff suggests that the language in section 517.03(1) characterizing the Depart-

---

changes the 1978 revision, "from date of the sale", back to the original 1977 version. Since the violation may not be discovered until long after the 30 days has expired, the department believes it is unfair to penalize the good faith seller who offers full restitution.

b. Subsection (2) is new language that expressly states what is implied in the existing language of section 517.211; that is plaintiffs can bring an action under section 517.301 for either recission [sic] or damages.

c. Subsections (3), (4) and (5) expressly state what the extent of recovery will be in an action for either recission [sic] or damages brought by either a purchaser or seller. This is mainly a clarification which applies standard rules of remedies.

d. Subsection (6) modifies the existing language by awarding attorney[s'] fees to the prevailing party, not just the plaintiff, *unless the court determines it would be unjust.* The existing law does not give the court the discretion to waive this award.

Staff of House Comm. on Commerce, Staff Analysis and Summary of Chapter 517, at 6–7 (Apr. 16, 1979).

ment's rulemaking power as "nonexclusive" supports his position that this Court also can imply private remedies under that section. Such an interpretation misconstrues the plain and ordinary meaning of the statute. The Department's rulemaking authority is nonexclusive because it can be exercised in conjunction with other chapters that apparently are governed by other administrative entities.

■ Courts generally apply a restrictive approach to implying private actions under the securities laws. *Transamerica*, 444 U.S. 11, 100 S.Ct. 242, 62 L.Ed.2d 146 (no private remedy under § 206 of Investment Advisors Act of 1940); *Landry v. All American Assurance Co.*, 688 F.2d 381, 388 (5th Cir.1982) (private cause of action not implied under § 17(a) of 1933 Act); *Merrill Lynch, Pierce, Fenner & Smith v. Del Valle*, 528 F.Supp. 147, 150–51 (S.D. Fla.1981) (no private right of action exists for violations of section 7(c) of the 1934 Act and Regulation T); *cf. R.T. Vanderbilt Co. v. OSHA*, 708 F.2d 570, 576 (11th Cir.1983) ("A court's determination of whether a right of action is presented involves a prudential rule of self-restraint"). This Court heeds the wisdom of other tribunals and similarly refuses to imply a right of action under Fla.Stat. § 517.03(1). The statutory history and framework of Chapter 517 in general, and the language of section 517.-03(1) in particular, make it "highly improbable that [the Legislature] absentmindedly forgot to mention an intended private action." *Transamerica*, 444 U.S. at 20, 100 S.Ct. at 247 (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 742, 99 S.Ct. 1946, 1981, 60 L.Ed.2d 560 (1979)); *cf.* 1 Fla.Jur.2d *Actions* § 27, at 235 (1977) ("[W]here a particular remedy is conferred by statute, it can be invoked only to the extent and in the manner prescribed, and must ordinarily be pursued to the exclusion of any other remedy.").

## V.  *Remaining Motions to Dismiss*

■ A.  Defendant FFS' motion to dismiss count 8 of plaintiff's Amended Complaint, sounding in negligence, for failure to allege that FFS owes plaintiff any duty, be and the same is hereby GRANTED. Plaintiff shall have twenty (20) days leave to amend its Amended Complaint in conformity with this order.

B.  Defendant FFS' motion to decline exercise of plaintiff's pendent claim in count 2, alleging that all defendants violated Fla. Stat. § 517.07, be and the same is hereby DENIED.

C.  Defendant Jackson and Oliver's motion to dismiss based on the release executed by plaintiff be and the same is hereby DENIED. The Court finds that in briefly referring to the release in paragraphs 27(c) and (d) of the Amended Complaint, plaintiff was not seeking to avoid or defeat potential affirmative defenses. Accordingly, plaintiff's references to the release are treated as surplusage. *See Hower v. Roberts*, 153 F.2d 726 (8th Cir.1946). The release executed by Mr. Eaton should be raised as an affirmative defense in defendants' answer. If defendants then move to dismiss, they are advised to address first, what law applies in interpreting the release; second, whether the nonwaiver provision of the Securities Act of 1933 and the Securities Exchange Act of 1934 are to be read into similar state law; and third, whether the controlling state securities law contains similar nonwaiver provisions.

D.  Defendant Jackson and Oliver's motion to dismiss plaintiff's claim for rescission be and the same is hereby DENIED. *See John R. Lewis, Inc. v. Newman*, 446 F.2d 800, 806 (5th Cir.1971) ("tender in the complaint itself is sufficient"); *Moses v. Michael*, 292 F.2d 614, 619 (5th Cir.1961).

## VI.  *Cross-claim for Indemnification or Contribution*

Defendant Reed seeks indemnification or contribution from co-defendants FFS, Oliver, and Jackson. The co-defendants have moved to dismiss both claims pursuant to Rule 12(b)(6), Fed.R.Civ.P. For the following reasons, the co-defendants' motion is granted, and Reed's cross-claim is dismissed without prejudice as to each co-defendant.

Indemnification is disfavored under the securities laws because it permits a wrongdoer "to escape loss by shifting his entire responsibility to another party." *Stowell v. Ted S. Finkel Investment Securities, Inc.*, 641 F.2d 323, 325 (5th Cir.1981). Thus, any claim for indemnity will be carefully examined to be certain that the claimant has satisfied the pleading requirements set forth in *Stowell.*

As explained in *Stowell*, for there to be a duty to indemnify, the indemnitee must allege three elements: First, he must explain the nature of the duty owed to him by the indemnitor; second, the indemnitee must explain how the indemnitor breached this duty; and third, he must allege that he has suffered injury as a result of the indemnitor's breach.

The defendant Reed's cross-claim for indemnity fails to satisfy these threshold pleading requirements; the allegations are far too general and conclusory. Accordingly, Reed's cross-claim for indemnity against FFS, Oliver, and Jackson is dismissed, and Reed shall have twenty (20) days from entry of this order to file a cross-claim for indemnity that comports with this order.

Reed's cross-claim for contribution also is dismissed with twenty (20) days leave to amend. Although "[c]ontribution is available from joint tortfeasors under the federal securities laws for securities violations," *Stowell*, 641 F.2d at 325, Reed again has failed to allege specifically which statutes support his claim for contribution. As to Reed's attempt to obtain contribution under Florida's common law, there must first be some showing that defendants FFS, Oliver, and/or Jackson violated a duty owed to Reed before contribution can be had. *Id.*