Nicholas VISCOMI, Plaintiff,

v.

PAINE, WEBBER, JACKSON &
CURTIS, INC. and Michael
Yarmuth, Defendants.

No. 84–6647–CIV.

United States District Court,
S.D. Florida, N.D.

Nov. 14, 1984.

John J. Murphy, Hollywood, Fla., for plaintiff.

O'Bannon M. Cook, Ruden, Barnett, McCloskey, Schuster & Russell, Miami, Fla., for defendants.

## ORDER OF DISMISSAL WITHOUT PREJUDICE

GONZALEZ, District Judge.

In this action plaintiff Nicholas Viscomi sues defendant Paine, Webber, Jackson & Curtis, Inc. and stockbroker Michael Yarmuth for violation of federal securities laws and Florida common law. The gravamen of plaintiff's complaint is that defendants "churned" his account. Count I seeks relief under section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j (1981), and Rule 10b–5, 17 C.F.R. § 240.-10b–5 (1983). Count II charges defendants with common-law fraud, while Count III seeks damages for defendants' misdelivery of certain bonds. Finally, Count IV requests an accounting for defendants' failure to keep plaintiff apprised of the transactions executed on his behalf by defendant Yarmuth.

The issue presented is whether plaintiff states a claim for churning under section 10(b) and Rule 10b–5. After reviewing the complaint and defendants' motion to dismiss, the court answers in the negative and dismisses plaintiff's entire complaint with twenty days leave to amend in conformity with this order.

. . . .

"The churning of a securities account occurs when a dealer, acting in his own

interests and against those of his customer, induces transactions in the customer's account which are excessive in size and frequency in light of the character of the account." *Vetter v. Shearson Hayden Stone Inc.,* 481 F.Supp. 64, 65 n. 1 (S.D.N. Y.1979) (quoting Note, *Churning by Securities Dealers,* 80 Harv.L.Rev. 869, 869 (1967)). A broker may be held liable for violating section 10(b) of the Securities Exchange Act of 1934 and Rule 10b–5 if the investor proves "(1) the trading in his account was excessive in light of his investment objectives; (2) the broker in question exercised control over the trading in the account; and (3) the broker acted with the intent to defraud or with willful and reckless disregard for the investor's interests." *Miley v. Oppenheimer & Co., Inc.,* 637 F.2d 318, 324 (5th Cir.1981). Because the act of churning itself is a deception or fraud, the allegations of such wrongdoing should be stated with "particularity". Rule 9(b), Fed.R.Civ.P. *See Miley,* 637 F.2d at 324 n. 4 ("Churning is classified as a 'device, scheme or artifice to defraud' ....).

■ Count I of plaintiff's complaint falls woefully short of stating with the requisite specificity the facts in support of his churning claim. Consider the salient portions of the complaint.

7. At all times defendant Yarmuth knew or should have known that Plaintiff's investment needs and objectives were for investment only in stable and income-producing securities in that Plaintiff was and is anticipating retirement in 1984 and depends on his investments for income on which to live.

8. Defendant Yarmuth induced and persuaded Plaintiff to allow him to assume control over Plaintiff's investment account on representation that defendant Yarmuth was an expert in the securities investment field, and that Plaintiff should rely on his expertise and knowledge, and should vest him with actual control over the handling of his account. In reliance on the aforesaid representations, Plaintiff did in fact vest actual control over his investment account with defendant Yarmuth.

9. Having induced Plaintiff to rely on his expertise and skill in handling the account, and having asserted and assumed control over the buying and selling of securities for the account, defendant Yarmuth, beginning on or about January 3, 1983 and continuing on [sic] or about November 3, 1983, wrongfully, intentionally, fraudulently, maliciously, and deceptively manipulated Plaintiff's account, and "churned" Plaintiff's account. That is, defendant Yarmuth excessively traded Plaintiff's account by purchasing and selling volative and speculative securities which trades were excessive in size and frequency in light of Plaintiff's financial objective and resources, without regard to the investment needs or objectives of Plaintiff. Such trading by defendant Yarmuth, was for the purpose of generating commissions and profits for the defendants and was in total and complete disregard for [sic] the financial and investment needs and objectives of the Plaintiff.

10. In addition to churning Plaintiff's account, defendant Yarmuth engaged in other manipulative and fraudulent activities in regard to Plaintiff's account, including but not limited to:

(a) Purchasing of shares of stock in small lots at the commission breakpoint so as to earn greater commissions on such purchases than would have been earned if defendant Yarmuth had purchased such shares in one transaction. Moreover, Yarmuth failed to disclose to Plaintiff the fact that by buying such shares in smaller lots, the commission on such purchases would be greater than if he purchased such shares in one transaction.

(b) Transferring funds into Plaintiff's account without his knowledge or consent, and without disclosing the source of such funds or purpose of such transfer.

(c) Purchasing and selling shares for Plaintiff's account without Plaintiff's approval.

(d) Misrepresenting the value of Plaintiff's account by advising Plaintiff that the account had increased in value, when in fact the same had decreased in value.

Complaint (filed July 31, 1984).

Plaintiff neither sets forth the specific securities and transactions involved in his case (including the nature and amount of the purchases and sales), nor states the amount of commissions generated by these transactions. If plaintiff has sued defendants over excessive trading, then plaintiff must do more than state unsubstantiated conclusory allegations or track the elements of a churning action. By requiring that plaintiff state defendants' alleged fraudulent acts with "particularity", Rule 9(b)

> 1) ... ensures that allegations are specific enough to inform a defendant of the act of which the plaintiff complains, and to enable him to prepare an effective response and defense; 2) ... eliminates those complaints filed as a pretext for the discovery of unknown wrongs—a 9(b) claimant must know what his claim is when he files; and 3) ... seeks to protect defendants from unfounded charges of wrongdoing which injure their reputations and goodwill.

*Benoay v. Decker*, 517 F.Supp. 490, 492 (S.D.N.Y.1981). Allegations of fraud in the securities context should be stated with particularity because generally the information giving rise to the action is available before commencement of the suit.

A comparison of the pleadings in other cases with those in the instant case provides further support for the court's decision to dismiss plaintiff's churning claim.

In *Vetter v. Shearson Hayden Stone Inc.*, 481 F.Supp. 64 (S.D.N.Y.1979), the district court dismissed plaintiff's churning claim for failure to plead the case with the required specificity. In her complaint, plaintiff averred that she opened a specific account with defendant and informed the broker that she was an unsophisticated investor; plaintiff set forth the broker's specific recommendations; and then she tracked the elements of a churning claim without supplying any underlying facts:

> 10. Thereafter, JABLON, without the permission or direction of VETTER, entered upon a course of conduct of selling and purchasing securities in VETTER's securities account which were (a) excessive in number, frequency and amount; (b) not authorized by her; and (c) not consistent with her investment objective.

*Id.* at 65. Characterizing plaintiff's allegations of churning as "conclusory", the court dismissed the complaint.

The pleadings in *In re Catanella and E.F. Hutton and Co., Inc. Securities Litigation*, 583 F.Supp. 1388 (E.D.Pa.1984), stand in sharp contrast to the generalized pleadings of fraud contained in *Vetter* and the instant case. In *Catenella*, the complaint set forth in detail the names of the securities churned, the frequency of trading, the commissions paid and the estimated turnover ratio. *Id.* at 1407. Similarly, in *Juster v. Rothschild, Unterberg, Towbin, Gruntal & Co.*, 554 F.Supp. 331 (S.D. N.Y.1983), the court ruled that plaintiff's allegations of churning were sufficient because the complaint stated the extent of plaintiff's financial acumen; the degree of control defendant broker exercised over plaintiff's account; the dollar amount of specific shares traded during the period in question; the number of times plaintiff's average monthly capital was turned over; the percentage of the total number of trades completed in each month of the relevant period; and the commissions paid to the defendants by the plaintiff as a result of those trades. *Id.* at 332. *Cf. Eaton v. Coal Par of West Virginia, Inc.*, 580 F.Supp. 572, 573–74 & n. 1, 576 (S.D.Fla. 1984) (Gonzalez, J.).

To recapitulate, Count I of plaintiff's complaint is dismissed because it fails to state with "particularity" the facts giving rise to the churning claim. Plaintiff's allegations fail to state what stocks were traded and how many shares were involved; there is no indication of the date on which these purchases and sales occurred, how much money was involved, and how much

money in commissions was generated by these transactions; no attempt is made to document the frequency of trading or the turnover ratio; and plaintiff does not allege the date or nature of the purported misrepresentation made to plaintiff as to the value of his account, or what was obtained as a consequence of those misrepresentations. To the extent that Count IV, which alleges that defendant broker failed "to account to the Customer for transactions on the Customer's account," Complaint ¶ 27, is merely an element in the more generalized churning claim, it too is dismissed.

■ Even if, *arguendo*, plaintiff's complaint satisfied the pleading requirements of Rule 9(b), Count I still would be dismissed for failure to state a claim for relief under 10(b) and Rule 10b–5. Although a churning claim can state a cause of action under section 10(b), *Thompson v. Smith Barney, Harris Upham & Co.*, 709 F.2d 1413, 1416–17 (11th Cir.1983), the plaintiff must at a minimum allege that defendant acted with scienter. *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). Plaintiff fails to allege scienter in regard to defendants' alleged manipulative and fraudulent activities, thus providing an alternate ground for dismissal of Count I.

. . . .

■ Counts II and III are state law claims for common-law fraud and misdelivery of bonds, respectively. Plaintiff asserts that the court has jurisdiction over these claims due to the presence of diverse citizenship among the parties. Complaint ¶ 18. However, the complaint fails to allege the citizenship of any of the parties, and thus warrants dismissal. Admittedly, the court can exercise subject-matter jurisdiction over the state actions based on the doctrine of pendent jurisdiction, *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), provided there exists an underlying federal claim. If, however, the federal claim is dismissed before trial, then the state claims must also

be dismissed. *Id.* at 726, 86 S.Ct. at 1139; *see also Stowell v. S. Finkel Investment Services, Inc.*, 489 F.Supp. 1209, 1217–18 (S.D.Fla.1980), *aff'd*, 641 F.2d 323 (5th Cir. 1981) (federal court should not exercise pendent jurisdiction over common-law fraud claim appended to section 10(b) action because of potential juror confusion caused by different standards of proof in each claim).

Accordingly, Counts II and III (and Count IV to the extent it is considered an independent state claim) are dismissed without prejudice.

. . . .

In summary, defendants' motion to dismiss plaintiff's complaint is granted. Plaintiff shall have twenty days leave to amend his complaint in conformity with this order.